Belknap,
Nov. 1, 1927.

MEREDITH *v.* EDWARD W. FULLERTON.

126

*Thomas P. Cheney* and *Robert W. Upton* (*Mr. Cheney* orally), for the plaintiff.

*Fletcher Hale* and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Demond* orally), for the defendant.

SNOW, J. 1. A town has the power to let its town hall for private use, for a reasonable period, when such use will not unreasonably interfere with municipal needs. *Curtis* v. *Portsmouth,* 67 N. H. 506, 508; *Worden* v. *New Bedford,* 131 Mass. 23, 24; 3 Dillon, Mun. Corp'ns (5th *ed.*), s. 997. The determination of the question as to whether the public requirements permit such letting, as well as the term for which the property may be spared for private use, is vested in the town. *Bates* v. *Bassett,* 60 Vt. 530; *French* v. *Quincy,* 3 Allen 9, 12; *Jones* v. *Sanford,* 66 Me. 585, 591; *Blood* v. *Company,* 68 N. H. 340, 342.

The grant of power to the selectmen was by express vote of the town at the meeting of 1920 "that the leasing of the Town Hall be

left with the selectmen." There being no ambiguity in this grant, it is not open to practical construction by showing that, under similar authority, the selectmen had in previous years invariably leased the hall for the term of one year only. The vote invested the selectmen with such discretion as respects the terms of the lease as the town possessed. The only limitations upon their authority was that the contract should be the product of good faith, and that the lease should be reasonable as to time and consideration. *Bates* v. *Bassett, supra; Blood* v. *Company, supra;* Cooley, Mun. Corp'ns, s. 76. That the contract complied with these requisites is supported by the findings of the master that "there has been no fraud practiced by or upon either the town or the defendant"; that "the Selectmen have . . . acted in accordance with their best judgment and for the best interests of the town from a revenue standpoint"; and by the master's declared inability to find on the evidence that "the rent reserved in said leases is either inadequate unjust or inequitable to the Town or to its tax payers."

If, however, the stipulations of the lease could be construed to be in excess of the general authority expressed in the vote of 1920, the "passing" without action of an article in the warrant of 1923 "to see what action the town will take relative to leasing the Town Hall," after the circumstances relative to the lease had been explained to the voters in open town meeting, was a tacit acceptance and ratification of the terms of the contract by the voters so far as they had the power. *Greenland* v. *Weeks,* 49 N. H. 472, 482; *Amazeen* v. *Newcastle,* 76 N. H. 250, 253.

A board of selectmen is a continuous body, and a majority are competent to act in all cases. P. L., c. 47, s. 12. The claim that the authority of the selectmen to bind the town did not extend beyond the terms of office of the individual members of the board ignores a settled distinction between the governmental or public, and the proprietary or business, powers of a municipality. *Rhobidas* v. *Concord,* 70 N. H. 90, 114; *Lockwood* v. *Dover,* 73 N. H. 209, 213; *Gates* v. *Milan,* 76 N. H. 135, 136; *Hampton &c. Co.* v. *Hampton,* 77 N. H. 373, 374; *Illinois Trust &c. Bank* v. *Arkansas City,* 76 Fed. Rep. 271, 282. In the last mentioned case it was contended that the city council could make no grant and conclude no contract which would bind the municipality beyond the terms of office of the members of that body. The court there fully and accurately states the distinction: "A city has two classes of powers, — the one legislative, public, governmental, in the exercise of which it is a sovereignty and

governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it . . . is ruling its people and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation."

It follows from the foregoing that there is no merit in the plaintiff's position that the lease is invalid for the want of authority, or for the want of due execution.

2. Primarily, however, the plaintiff bases its claim to a cancelation of the lease on the ground of its illegality. The illegal provisions relied upon are (a) the town's promise of a license to exhibit moving pictures during the terms of the lease and of its renewal, without requiring payment of the fee therefor in advance, and (b) the town's covenant "that the selectmen or their successors shall not issue any other license or privilege to show or exhibit motion picture[s] in said Town of Meredith during the term of the lease, or any renewal thereof."

P. L., c. 145, s. 2, provides: "No theatrical or dramatic representation shall be performed or exhibited . . . unless a special license therefor shall first be obtained from the selectmen of the town . . . ; s. 4, Every such special license shall be in writing, and shall specify the day and hour of the permit to perform or exhibit. . . . Every licensee shall pay in advance for such license, for the use of the . . . town, a sum not more than three hundred dollars for each day such licensee shall perform or exhibit . . . s. 5, If any person shall violate the provisions of the preceding sections he shall be fined not more than five hundred dollars. . . ."

In the performance of their duties under this statute selectmen act in a judicial capacity and not as agents of the town. *Boody* v. *Watson*, 64 N. H. 162, 198; *Sargent* v. *Little*, 72 N. H. 555, 556; *Silverman* v. *Gagnon*, 74 N. H. 502, 503; *Locke* v. *Laconia*, 78 N. H. 79, 82. In passing upon an application for a license they are neither performing executive duties as town officers nor dealing with the town's proprietary interest. They cannot, by contract in promotion of their other governmental duties or of the town's proprietary interest, bar

themselves, and their successors in office from the exercise of their judicial duties under the statute. A promise to do so is necessarily null and void. It follows that in so far as the selectmen, either in behalf of themselves or in behalf of the town, undertook to grant the defendant a perpetual license for the term of the lease and its renewal, to waive advanced payments of the fee therefor, or to bind themselves and their successors to refuse licenses to others, their stipulations were illegal and void.

It is unnecessary to consider the defendant's contention that the statute (P. L., c. 145, s. 2), being restrictive in character, should be construed to vest in the selectmen a reasonable discretion in respect to the granting and denial of licenses where unhealthy and disastrous competition is threatened; and it has not been considered. For if it were conceded that, by reason of the public interest in more prosperous operators and better exhibitions, the selectmen had the power to limit the issue of licenses, they had no right to promise the defendant to close the door of their tribunal to further applicants, or to refuse to listen to evidence as to the public requirements under changing conditions. Their promise was not to perform, but to renounce, their judicial functions.

It is true, as the defendant has pointed out in argument, that there is here no infirmity in the consideration moving from him which destroys the enforceability of the town's promises. His agreement was to pay rental in which, standing by itself, there is no illegality. The promises which the town is seeking to annul are its grant of use and occupation and other legal undertakings. The illegality relied upon to invalidate such promises subsists solely in its accompanying promises. It follows that the distinguishing principle, upon which all promises founded in whole or in part upon an illegal consideration are held to be void, has no direct application here. See 1 Par., Cont. (9th *ed.*) 496; *Piper* v. *Railroad,* 75 N. H. 435, 437, 440. It is likewise true, that the lease being under seal, no question of a failure of consideration, as distinguished from illegal consideration, can arise. In other words, as respects the sufficiency of the consideration for the town's legal promises, it is as though Fullerton had performed his promise; and the principles here applicable are those governing the enforcement of unilateral contracts. 3 Will., Cont., *ss.* 1779, 1782; 2 Williston, Sales (2nd *ed.*), *s.* 681. See Williston's Wald's Pollock, Cont. (3d *ed.*) 484, *note.* We have, then, succinctly presented the question whether or not the legal grant by the town of use and occupation, and its other legal undertakings, are invalidated by the town's

accompanying illegal promises, the consideration for all of which, considered by itself, is legal.

It is the defendant's contention that, having promised nothing illegal, he may elect to waive the performance of the town's illegal promises and hold it to the discharge of the lawful portion of its engagements. It is manifest that if the defendant has such an election the court may not annul the lease.

The right of waiver upon which the defendant here relies has been most frequently applied in cases of contracts in unreasonable restraint of trade. Such authorities are numerous. The right has, moreover, been allowed in other cases where the illegal stipulation, as in contracts in restraint of trade, was not deemed to be *contra bonos mores*. *Erie Railway Co.* ads. *Company*, 35 N. J. Law 240, 245; *West. Union Tel. Co.* v. *Railway*, 11 Fed. Rep. 1, 4; *Illinois Tr. & Sav. Bank* v. *Arkansas City*, 76 Fed. Rep. 271, 280, 281; *United States* v. *Bradley*, 10 Pet. 343, 346; *Osgood* v. *Railway*, 77 Vt. 334, 343; *St. Louis &c. Ry* v. *Matthews*, 64 Ark. 398; *Smith's Appeal*, 113 Pa. St. 579, 590. While the courts have not always, in terms, so limited the application of the doctrine, the consensus of the better authorities is that it does not apply when the promise sought to be waived is *malum in se*. 17 Yale L. J. 338, 339, 342, 346; Corbin's Anson, Cont. (4th Am. *ed.*), *s.* 261, *note* 1; 3 Will., Cont., *s.* 1779. In some of the leading cases the limitations of the rule have been recognized, and expressly or impliedly stated. *Erie Railway Co.* ads. *Company*, *supra;* *United States* v. *Bradley*, *supra;* *Illinois Tr. & Sav. Bank* v. *Arkansas City*, *supra*. In *Piper* v. *Railroad*, 75 N. H. 435, 440, cited by the defendant in support of his claim of a right of waiver, the void promise contained no elements of moral turpitude. As the court there pointed out, if Piper had done as he agreed "he would have violated no rule of the common law, no provision of the statutes, and no canon of morality. . . . The stipulation as to the defendants' personal negligence [the invalid promise] is, therefore, neither illegal nor immoral. At most, it is simply voidable — unenforceable." The case, therefore, is not an authority for the right of election by a promisee to waive an immoral stipulation. It is our conclusion that the doctrine of waiver for which the defendant contends does not apply to promises *malum in se*.

A question here presented, then, is whether the illegal promises of the town are so far immoral as to bar the defendant, upon waiver thereof, of his right to enforce the town's legal promises; in other words, whether the plaintiff's illegal promises infused into the lease

such elements of moral turpitude as to contaminate the entire contract, and constrain the court not only to refuse to enforce any part of it, but to decline to order its annulment.

Having in mind the informal manner in which the duties of selectmen are usually administered, in whatever capacity they may be acting, the mere fact that they assumed to perform their judicial duty of granting a license in connection with the performance of their proprietary duty of leasing the town hall, did not necessarily invalidate the former. Nor are we required to decide whether the agreement for a term instead of a special license, or the agreement to accept the fees therefor in arrears instead of in advance, would constitute more than a breach of the regulatory provisions of the statute. It may be conceded for the purpose of this case that such deviations from the statutory requirements involved no moral delinquency, and that such illegal provisions of the lease constituted merely void and unenforceable undertakings. But the selectmen's undertaking in behalf of the town to secure to the lessee the exclusive privilege of exhibiting in the town, by promising that they and their successors in office would refuse licenses to any other operator, was clearly a renunciation of judicial duties vested in them as a licensing board by the statute. As found by the master, they assumed "to barter away their judicial functions" in the town's proprietary interest. It must be granted that their acts, to this extent at least, were immoral, and that such acts were not purged of their immorality because they were acting without fraud and within their supposed powers as agents of the town.

It may be conceded that the unauthorized insertion of the covenant in the lease did not make it the act of the town. But the selectmen, by virtue of their implied powers in its proprietary affairs, had the charge and management of the town hall, and by express vote the power to lease it. It was their duty to effect an advantageous lease of the town hall. Acting in accordance with their best judgment, and for what they deemed to be the town's best interests from a revenue standpoint, they entered into the illegal covenant. That the restrictive covenant was an inducement to the defendant to pay a higher rental may be assumed. Having accepted the benefit of the lease for five years, the inhabitants, in 1923, acting upon an article in the warrant "to see what action the town will take relative to leasing the Town Hall," after the circumstances relating to the lease had been explained in open town meeting, voted that the article be "passed." This was an acceptance of the existing contract with the

defendant, and a ratification of the provisions of the lease. In dealing with its proprietary matters, in so far as we are here concerned, the town had the powers of an individual, and in the exercise of such powers, it was subject to the same rules that govern individuals. With the benefits accruing under the lease, the town accepted all the burdens, and was chargeable with all the imputations that inhered in its adopted promises. *Glidden* v. *Unity*, 33 N. H. 571, 577. Had the illegal act been subject to a penalty such penalty would have been incurred by the town. *Greenland* v. *Weeks*, 49 N. H. 472, 478, 480, 482. The immorally illegal covenant became the act of the town.

If the only consideration here was the public interest in competition *versus* monopoly, there would be some basis for the defendant's argument that the town's restrictive covenant is illegal only in the sense that an agreement in undue restraint of trade is illegal; in other words, that it is merely void and unenforceable. But a contract in behalf of the town to coerce its officers in respect to the exercise of their judicial functions involves considerations beyond the mere regulation of the business of supplying the public with entertainment. Our courts have always been vigilant to detect, and quick to discountenance, any sinister influence which may have affected the official action of persons performing governmental duties. *Third Turnpike, Prop'rs of,* v. *Champney*, 2 N. H. 199, 201; *Dudley* v. *Cilley,* 5 N. H. 558, 561; *Knowles' Petition*, 22 N. H. 361, 363; *Weeks* v. *Hill,* 38 N. H. 199, 203; *Edgerly* v. *Hale*, 71 N. H. 138, 146; *Page* v. *Claggett,* 71 N. H. 85, 86. Such circumspection is nowhere more important than in the case of officials performing judicial duties. The immorality of an agreement, made by one having influence over a person charged with the performance of judicial duties, that the latter shall decline to discharge such duties is self-evident. The very statement of it shocks the public moral sense. The insidious influence of the town over the action of its officers is manifestly more potent where the officers themselves have given the town's promise to restrict their own action. But we are not dealing merely with a potential danger. That the influence was effective here is established by the findings that the selectmen understood that they were bound by the contract not to consider applications for license to exhibit moving pictures made by any other person, and that they have for that reason refused to consider all such applications. The motives which actuated the parties are immaterial. It is the general tendency of the contract that is controling, and here a vicious tendency has been demon-

strated. The contract has been productive of the very evil which it was calculated to produce.

Nor can the defendant claim freedom from guilt. With a promise of increased rental, he purchased and accepted the benefit of the town's agreement that the selectmen should refuse to grant licenses to his competitors. It is as illegal, and as immoral, to pay money for the prostitution of a public office as it is to receive it. *Burnham* v. *Holt*, 14 N. H. 367, 370. In making the judicial functions of the selectmen a matter of barter and sale the parties were *in pari delicto*.

When parties to an illegal contract are *in pari delicto* the general rule is *potior est conditio defendentis et possidentis*. *White* v. *Hunter*, 23 N. H. 128, 134; *Hall* v. *Costello*, 48 N. H. 176, 179. If the contract is executory the court will neither compel performance nor grant damages for its breach. *Thompson* v. *Williams*, 58 N. H. 248, 249; *Harriman* v. *Bunker*, 79 N. H. 127, 129. When it has been fully executed the law will not assist a party to recover the money or property with which he has parted. *Smith* v. *Bean*, 15 N. H. 577, 578; *White* v. *Hunter, supra*, 135; *Upton* v. *Haines*, 55 N. H. 283, 286; *Thompson* v. *Williams, supra; Stockwell* v. *Stockwell*, 72 N. H. 69, 70; *Harriman* v. *Bunker, supra*. In other words, when the rule applies, the contract cannot be made the foundation of legal proceedings (*Smith* v. *Bean, supra*), or, as it is frequently expressed, the law leaves the parties where they placed themselves. *Stockwell* v. *Stockwell, supra; Roby* v. *West*, 4 N. H. 285, 290.

It is, however, a corollary to this rule that until the illegal purpose has been executed, there is a *locus poenitentiae* during which either party may repent and withdraw. So long as the contract remains executory, he may disaffirm it on account of its illegality and recover back money or property which he has advanced under it. *Hoit* v. *Hodge*, 6 N. H. 104, 105; *Perkins* v. *Eaton*, 3 N. H. 152, 155; *Clark* v. *Gibson*, 12 N. H. 386, 389; *Souhegan Nat. Bank* v. *Wallace*, 61 N. H. 24, 27.

The plaintiff's bill is brought in disaffirmance of the lease and is equivalent to a rescission. The plaintiff, by its action, repudiates the contract so far as it is executory, and seeks to be relieved from further performance of its illegal undertakings. While the lease by its terms was to run for a stipulated period, the promises on either side call for performance of a continuing nature. For the monthly rentals the town, in substance, promised the defendant the current use of the hall, together with heat lights and janitor services, and concurrently therewith the illegal exclusive license. As to the past the rule ap-

plicable to parties *in pari delicto* controls, and there can be no recovery, but as to the future the *delictum* is incomplete. It follows that as to the unexpired term of the lease the doctrine of *locus poenitentiae* applies. *Souhegan Nat. Bank* v. *Wallace*, 61 N. H. 24, 27.

The rule, *potior est conditio defendentis*, is not based upon any advantage or disadvantage to either party (*Hill* v. *Spear*, 50 N. H. 253, 261) but upon considerations of public policy which look to the suppression of illegal practices (*Skiff* v. *Johnson*, 57 N. H. 475, 479), and require that every legal obstacle be interposed to put a stop to the illegal transaction. *Chauncey* v. *Yeaton*, 1 N. H. 151, 156. The rule does not extend beyond the reason for it. To the extent that the contract remains executory, the rule, qualified by its corollary as here interpreted (*Souhegan Nat. Bank* v. *Wallace, supra*), does not prevent the court's interposition in the interest of putting an end to a continuing evil. On the other hand, the underlying reason for the rule plainly calls for such action.

We are not unmindful of the position which has many times been advanced, and even more frequently tacitly assumed, in other jurisdictions, that the application of the doctrine of *locus poenitentiae* is limited to promises not involving moral turpitude, and to contracts of which there has been no part performance. These positions have been questioned. 6 R. C. L., Contracts, s. 221; 26 Harv. Law Rev. 740. The maxim *in pari delicto, potior est conditio defendentis et possidentis*, and the qualifying doctrine of *locus poenitentiae*, are but expressions of general rules of public policy. The underlying reason therefor is to protect society from the influence of contracts made in disregard of the public weal by reducing the number of such transactions to a minimum, and by interrupting the progress of illegal undertakings before the evil purpose has been fully consummated. To hold that the hand of the court is stayed merely because of the pernicious character of the illegal promise, or solely because its performance was not sooner arrested, seems like a perversion of the real purpose of the doctrine. The spirit and intent, rather than the letter, of the maxim and of its qualifying doctrine should control. *Souhegan Nat. Bank* v. *Wallace, supra*. The real question at issue in any particular case is whether the ends of the law will be furthered or defeated by granting relief. 26 Harv. Law Rev. 740; 13 C. J. 502.

While it may be assumed that the statement herein of the legal duties of the selectmen as a licensing board will be sufficient to restrain them from further intentional misfeasance, it must be conceded that the continued possession of the town hall by the defendant, which

had its inception in the illegal contract, would have a tendency unconsciously to influence their action in the further performance of their judicial duties. While the shadow of the illegal relations subsists they cannot be regarded as an impartial tribunal. It would be at variance with the spirit of the rule to permit a continuance of a situation which would have a tendency to promote the very evil the rule is intended to obviate. Therefore, public policy, which lies at the basis of the rule, demands a decree declaring the contract null and void and requiring the defendant to relinquish to the town the possession of its town hall.

In accordance with the order made in the superior court, the order here must be

*Decree for the plaintiff.*

All concurred.