Hillsborough,
June 25, 1941. } No. 3230.

DANIEL B. LEARY *v.* MANCHESTER.

*Thorp & Branch* (*Mr. Branch* orally), for the plaintiff.

*William H. Craig*, City Solicitor, and *J. Francis Roche* (*Mr. Roche* orally), for the defendant.

ALLEN, C. J.   As an outcome of the prior litigation the city seeks to obtain by eminent domain full title to the premises in which it now has an easement, on the ground that the expense of maintenance which the terms of the easement impose upon it as a continuing obligation will be substantially greater than the value of the plaintiff's ownership.   The novel situation is presented in which full title to property results in real economy in comparison with only an easement therein.   The easement is of a right to build a ditch across the plaintiff's land, and in part consideration for it the city agreed to maintain the ditch in a manner causing no unnecessary damage to the premises over which it was to run.   The alleged necessity for the city to become the owner in full title of the premises injuriously affected by an improper maintenance of the ditch is not to protect the city's water supply but to do away with the expense of avoiding a private nuisance.

The right of eminent domain conferred upon the city's board of water commissioners by special act (Laws 1891, *c.* 26, *s.* 2) is a limited one.   It is granted only "for the preservation of the purity of the water" of Lake Massabesic.   The claim of right now asserted is not to protect the city's water supply.   Ownership of the easement fully accomplishes the protection, so far as the plaintiff's land is needed therefor.   The fact that protection can be less expensively secured by full ownership of the land does not constitute a threat against the purity of the water.   Since the grant of power to condemn in-

cludes only its express terms and necessary implications (*Thompson* v. *Company*, 78 N. H. 433, 434; *Maine-New Hampshire &c. Authority* v. *Ham*, *ante* 179), the plaintiff's title cannot be acquired under the act above cited.

A general statute (P. L., *c.* 42, *s.* 71) authorizes towns to condemn "any land required for public use," if, as is here assumed, it cannot be obtained by contract. In cities the city councils are vested with the authority (P. L., *c.* 54, *s.* 1).

The statute widens the scope of the predecessor law (Laws 1872, *c.* 38; Gen. Laws, *c.* 37, *s.* 7) authorizing the taking of land by municipalities for a purpose of fire protection. The change was made in 1891 (P. S., *c.* 40, *s.* 6), and by it land which the municipality might acquire by purchase "for the public uses of the inhabitants" (P. S., *c.* 40, *s.* 3; P. L., *c.* 42, *s.* 3) could be acquired by condemnation if no agreement to purchase could be made. The test of public use under either method is the same. Any authorized public undertaking is one for public use, and no purpose in the legislation is found that only in the case of strictly governmental functions may the authority either to purchase or to condemn be exercised or exerted. Maintenance of a public library by a municipality is an obligation voluntarily assumed, and land for it may be acquired by condemnation as well as by purchase. *Attorney-General* v. *Nashua*, 67 N. H. 478. It would be thought anomalous if title to land for a public park or common might be gained only by purchase.

The special grant of the power in connection with municipal water works (P. L., *c.* 43, *s.* 2) and lighting systems (P. L., *c.* 44, *ss.* 8, 15) or in taking land for public playgrounds (P. L., *c.* 42, *s.* 32) manifests no limitation of the public use for which the general power may be employed. Without the special grant the power would exist under the general grant. Authority to conduct the business of waterworks and lighting systems implies authority to acquire property needed therefor, and the general right to condemn is as applicable as the general right to purchase. These subjects are dealt with comprehensively by the legislation providing for them, and the inclusion in the legislation of special power to acquire real estate does not cut down the scope of the general power. The legislation was enacted subsequently to the Public Statutes of 1891 and to the case of *Attorney-General* v. *Nashua*, *supra*, and it does not serve to show the legislative thought and intent of that year, or that the reënactment of the general and special powers in 1926 by Public Laws calls for a change of construction.

The city councils may not exercise authority specially granted to special administrative boards, but authority withheld from such boards remains in the councils. They may not interfere with the authority and functions of the boards, but subject thereto they may act for the city's general welfare within legislative permission. Any economy which may be effected in any city department is more than of departmental interest. It benefits the city as a whole, and if it may be brought about by action of the city councils when the administrative board is powerless to accomplish it and when the action does not intrude upon the board's authority and functions, the special authority assigned to the board does not take away the general authority of the councils except to the extent of the special authority. The grant of special authority was not intended to revoke authority not included in the grant. While the plaintiff's title may not be taken to protect the city's water supply by its board of water commissioners, may it be taken by the city councils for some other public use?

The issue is not what particular use is to be made of the property sought to be taken, but whether some public advantage duly authorized to be accomplished is furthered. The plaintiff does not complain on the ground that the use proposed to be made of the property is unauthorized, but alleges that a taking for the purpose of public economy is not for an authorized public purpose. An unauthorized use of the property may be enjoined in behalf of an interested party, and the taking here sought, if it were for the purpose of making such a use, would be invalid. Whether the city may take in order to obtain relief from a public burden, is the only question now presented.

In general definition, a public use "only can be considered such where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience, or welfare, which, on account of their peculiar character, and the difficulty—perhaps impossibility—of making provision for them otherwise, it is alike proper, useful, and needful for the government to provide." Cooley, Const. Lim., (7th ed.), 768, 769. "The fundamental purpose of government is to protect the health, safety and general welfare of the public. . . . Its power plant for the purpose consists of the power of taxation, the police power and the power of eminent domain. Whenever there arises, in the State, a condition of affairs holding a substantial menace to the public health, safety or general welfare, it becomes the duty of the government to apply whatever power is necessary and appropriate to check it. There are

differences in the nature and characteristics of the powers, though distinction between them is often fine. . . . But if the menace is serious enough to the public to warrant public action and the power applied is reasonably and fairly calculated to check it, and bears a reasonable relation to the evil, it seems to be constitutionally immaterial whether one or another of the sovereign powers is employed." *New York &c. Authority* v. *Muller*, 270 N. Y. 333.

The public use is a purpose "of a public or governmental nature." *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1, 15. The purpose is as broad as that for which the property may validly be taxed. *Ib.*, 13. The public use refers to the public welfare, and not to an active use of the property in some particular manner. While in most cases there is such active use, yet if the general welfare is served, the use may be negative and merely an acquisition of the owner's title. A highway may be laid out with no purpose to devote its entire width to actual travel over it. The width not used for travel conduces to the safety and convenience of travel, and is thus a public facility, but the use may be inoperatively exercised. Exclusion of private occupancy may be a public need. Public advantage short of private aid, as more than use by the public, is a public use, and on this view authority for condemnation in behalf of persons or corporations under obligation to furnish a public service is sustained. *Concord Railroad* v. *Greely*, 17 N. H. 47; *Holt* v. *Antrim*, 64 N. H. 284; *Rockingham &c. Co.* v. *Hobbs*, 72 N. H. 531; *McMillan* v. *Noyes*, 75 N. H. 258; *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1, 10-17. It "is not that some public benefit indirectly accruing from a private use of land is a public use of it, but that by the exercise of the power of eminent domain the public acquire a right." *Holt* v. *Antrim*, *supra*, 287.

Examples showing that active use of the property taken is not essential are cases validating slum clearance projects without the necessity of rebuilding on the sites cleared (*Stockus* v. *Authority*, 304 Mass. 507; *Housing Authority* v. *Higginbotham*, 135 Texas 158), and cases of swamp drainage (cited in 20 C. J. 580 and 18 Am. Jur. 698).

That public economy, including any proper measures lessening the burden of taxation, is a matter of the general welfare, needs no discussion. Const., Pt. I, *art.* 36. Riddance of private ownership causing undue public expense may be as great a public need as one requiring expenditure. A public use is served.

The circumstance here that the city already has an easement in the property sought to be taken, is immaterial. The easement was obtained by grant, but if it had been obtained by condemnation,

the taking of the plaintiff's remaining ownership will be no less to serve a public need. Eminent domain extends to the full exhaustion of private ownership. As an attribute of sovereignty its limits of exercise are unconfined if they meet a purpose of public welfare beyond that gained from private benefit. Whether a right or interest in the use of property is enlarged, or whether relief from burden is gained, the power to condemn is available. An annotation on the point is found in 108 A. L. R. 1522.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.