HERBERT W. PETERSON *v.* EDWARD A. RAMCKE ET AL.

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 11—decided July 21, 1953

*Louis W. Schaefer,* with whom were *Edward C. Krawiecki* and, on the brief, *Albert S. Bill,* for the appellant (plaintiff).

*John M. Murphy,* with whom, on the brief, were

*John R. Thim* and *Anthony I. Wells,* for the appellees (defendants).

BALDWIN, J: The plaintiff sought to enjoin the defendants from denying to him and his tenants the use of a roadway to the seashore. He also claimed damages because they had erected a fence across the roadway. The court rendered judgment for the defendants and the plaintiff has appealed.

The pertinent facts in the finding, which is not subject to correction, are as follows: The plaintiff owns three separate parcels of land lying near the shore of Long Island Sound in Westbrook. The land is divided into lots with cottages erected upon them. The plaintiff purchased the first parcel in April, 1938, the second in August, 1944, and the third in January, 1945. The third parcel, which is the largest, is described in the deed to the plaintiff as lots numbered 29 to 34, 36 to 40 and portions of lots 28 and 41, "as shown on the map of Lewis Division of the Menunketesuck Farm, as surveyed by E. P. Augur." This map portrays an extensive layout of numbered lots and roadways. One of these roadways, Broadway, extends from the northern limits of the tract to the shore of Long Island Sound. Another, Linden Avenue, east of and parallel with Broadway, extends southerly to a street designated as Grove Way or Town Road. A third, Elm Street, which is east of and substantially parallel with Linden Avenue, borders the layout on the east and intersects Grove Way. Grove Way or Town Road begins at Broadway and runs easterly, intersecting Linden Avenue and Elm Street at substantially right angles. Two other named roadways, Connecticut and Massachusetts Avenues, extend southerly to the shore from Grove Way between its intersections with Linden Avenue

and Elm Street. Connecticut Avenue is the road which, the plaintiff claims, he and his tenants have the right to use to go to the beach. His third parcel is located between Linden Avenue and Elm Street some distance north of Grove Way. There was no evidence that Lewis had ever made the map in question or that it had ever been offered for record by him or officially received by the town clerk of Westbrook. It was undated, but the fact that it shows the right of way of the Shore Line Electric Railway Company fixes its origin as later than 1905, when, it can be judicially noticed, that company was first chartered by the General Assembly. 14 Spec. Laws 719.

The second parcel is described in the plaintiff's deed as lots 9, 10 and 11 on a map on file in the office of the town clerk, designated "Property of Jane Lewis at Grove Beach, Conn., April 1926." The first parcel is described without reference to any map. Both the first and second parcels are located on Linden Avenue north of Grove Way. None of the deeds to the plaintiff or the maps referred to therein contain any reference whatsoever to a right of way in Connecticut Avenue or elsewhere.

The defendants' land, which they acquired in 1949, is described in their deed as lot 18 on "map of Section No. 1 of Lewis' subdivision of Menunketesuck Farm, . . . recorded July 6, 1883," in the Westbrook land records. This map, which is dated July 6, 1883, and was recorded July 18, 1883, shows lots numbered 1 to 22 and includes land lying between Grove Way, described on the map as "Road to Clinton," and the seashore. It shows Connecticut and Massachusetts Avenues extending south to the shore across another road running east and west, described as Bluff Street. These are the same avenues as those

appearing on the map of "Lewis' Division of Menun-
ketesuck Farm" as surveyed by E. P. Augur. The
defendants' lot 18 on the 1883 map is located on the
southwest corner of Connecticut Avenue and Bluff
Street. The map contains a statement signed by
William I. Lewis that he has subdivided part of
Menunketesuck Farm "into lots numbered 1 to 22
inclusive, Streets and Avenues which are reserved to
the exclusive use, benefit and control of the lot hold-
ers fronting on said Streets and Avenues" as shown
on the map. The deed to the defendants specifically
conveys the fee in the western half of Connecticut
Avenue adjacent to their lot, subject to a right of
way "for owners of adjoining lots." The adjoining
property owners, at their own expense, have im-
proved Connecticut Avenue a short distance south
of Grove Way, but the remainder has been left as a
narrow passway with an unimproved gravel sur-
face. They have maintained "no trespassing" signs
on Connecticut Avenue for many years.

None of the plaintiff's land appears on the 1883
map, nor does it front on any of the streets shown
thereon. The plaintiff and his tenants have long used
Broadway and Elm Street, which afford ready access
to the beach. The general public has made occasional
use of Connecticut Avenue for purposes of fishing
and bathing, and the plaintiff's use of it has not been
different in manner or degree from that of the public.

The trial court concluded that neither Lewis, who
was the common predecessor in title to both parties,
nor his successors in title ever intended to dedicate
Connecticut Avenue to public use; that the deed to
the plaintiff did not give him or his tenants any right
to use it; and that he has acquired no such right by
prescription and consequently has suffered no
damage from the erection of the fence.

The first claim of the plaintiff is that he has acquired a right of way by prescription to use Connecticut Avenue. To establish a right of way by prescription, the plaintiff had to prove that he and his predecessors in title had made, under a claim of right, an open and visible use of the way, continuously and without interruption for fifteen years. *Aksomitas* v. *South End Realty Co.*, 136 Conn. 277, 281, 70 A.2d 552; *Dunn* v. *Santino*, 139 Conn. 352, 355, 93 A.2d 726. "[W]here an individual use is in common with a public use the individual user, in order to establish an independent prescriptive right, must perform some act to the knowledge of the servient owner clearly indicating his individual claim of right." *Missionary Society* v. *Coutu*, 134 Conn. 576, 582, 59 A.2d 732; *Great Hill Lake, Inc.* v. *Caswell*, 126 Conn. 364, 366, 11 A.2d 396; *Merwin* v. *Wheeler*, 41 Conn. 14, 24. The trial court's finding that the use made by the plaintiff and his predecessors in title was not different from that made by the general public is fatal to the establishment of any prescriptive right in the plaintiff.

The plaintiff contends further that he and his predecessors in title, having purchased lots shown on a plan of development which designated certain streets therein, have the right to insist that the streets be kept open for use in connection with their lots. "[W]here an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands." *Whitton* v. *Clark*, 112 Conn. 28, 32, 151 A. 305; *Gerald Park Improvement Assn., Inc.* v. *Bini*, 138

Conn. 232, 235, 83 A.2d 195. The court has not found that William I. Lewis caused the map referred to in the deed of the plaintiff's third parcel to be made, nor does it appear that this map was prepared and filed as required by the statutes. General Statutes, Rev. 1902, §§ 1853, 4054; Rev. 1918, §§ 319, 5115; Rev. 1930, §§ 328, 5040; Rev. 1949, §§ 557, 7125; Cum. Sup. 1951, § 107b. While it is not specifically stated in *Whitton* v. *Clark* and *Gerald Park Improvement Assn., Inc.* v. *Bini* that the map must be so filed to render the rule stated applicable, the fact was that in each of those cases the map had been filed with the town clerk. See *Lucy* v. *Oram,* 114 Conn. 642, 643, 159 A. 655; *Merino* v. *George F. Fish, Inc.,* 112 Conn. 557, 559, 153 A. 301; *Lake Garda Co.* v. *D'Arche,* 135 Conn. 449, 451, 66 A.2d 120.

The defect in the plaintiff's claim goes deeper than his failure to prove the making and filing of the map referred to in his deed. The facts established by the finding make it impossible upon the principle hereinbefore stated for the plaintiff to prevail. The land of the defendants is described in their deed by reference to a map which Lewis made and recorded in 1883. This map reserves the exclusive use of Connecticut Avenue to the owners of twenty-two lots fronting on the streets shown thereon. The plaintiff owns none of these lots. Even if Lewis had made and filed the map referred to in the plaintiff's deed, he must have done so at a date long subsequent to 1883. He could not at a later time give to the plaintiff's predecessors in title any rights in Connecticut Avenue superior to those already granted to the defendants' predecessors in title. Indeed, he had no such rights left to convey. The map referred to in the plaintiff's deed to the second parcel is still more recent, while his deed to the first parcel contains no reference to

any map whatsoever. Moreover, the defendants' deed, besides making reference to the 1883 map, conveyed to them the fee in that half of Connecticut Avenue adjacent to their land, subject to a right of way "for owners of adjoining lots." The plaintiff makes no claim that the deeds to the defendants' predecessors in title were not in accord with the declaration of the original grantor contained in the 1883 map. These twenty-two lot owners only and not the plaintiff acquired rights in Connecticut Avenue. The court was correct in overruling the contention of the plaintiff that he acquired rights in Connecticut Avenue by virtue of the plan of development which he relied upon.

The plaintiff also claims that he has a right to use Connecticut Avenue as a member of the public. While the recording of a map designating certain land as streets, followed by their public use or improvement, may make them highways by dedication and acceptance (*Street* v. *Leete,* 79 Conn. 352, 357, 65 A. 373; *Johnson* v. *Watertown,* 131 Conn. 84, 89, 38 A.2d 1), the trial court found that Lewis had never intended to dedicate Connecticut Avenue to the use of the general public and that neither the town nor the public had ever accepted it as a public highway. *LaChappelle* v. *Jewett City,* 121 Conn. 381, 387, 185 A. 175.

The errors assigned in the rulings on evidence are without merit.

There is no error.

In this opinion the other judges concurred.