Grafton,
No. 5365.

WILLIAM B. ELMER

*v.*

E. HUDSON RODGERS & *a.*

Argued September 8, 1965.
Decided December 7, 1965.

*Batchelder* & *Murphy* (*Mr. Walter L. Murphy* orally), for the plaintiff.

*Robert G. Wakefield* and *Cofran, Quint & Greenhalge* (*Mr. L. Wilder Quint* orally), for the defendants.

LAMPRON, J. The West Thornton Methodist Church owned this property from 1888 until it was conveyed to the defendants in 1963. Having never been used as a church lot, prescriptive rights could be acquired in it. RSA 477:34. The Master's report was in part as follows:

"The undisputed evidence was to the effect that members of the general public as well as members of the church and their guests have used the beach and an area near the beach for bathing and picnicking purposes continuously for a period in excess of sixty years. During this period the public gained access to the beach and picnic area by means of the driveway near the buildings on the premises. The defendants contend that the use of the premises by the public has been with the consent and permission of the church, and therefore the public has acquired no rights by adverse possession or dedication.

"Several witnesses testified that they personally had used the premises for bathing and picnicking openly, under a claim of right, without obtaining permission from the church officials, continuously for a period in excess of twenty years. There was evidence that residents of West Thornton, Woodstock and other towns as well as summer residents and employees had used the premises under a claim of right, without permission, as a public beach and picnic area for a continuous period of approximately sixty years until a fence was erected in 1963. The use of the premises by the general public was of such a nature and to such an extent that the owners of the land should have known that the right was being exercised without regard to the consent of the owners.

"The Master finds and rules that the general public has continuously, openly, without interruption, under a claim of right, and without the permission of the owners, used the right of way over the land owned by the defendants for ingress and egress to the shore of Mirror Lake for bathing and picnicking purposes, for a period in excess of twenty years, and therefore the public has acquired a right of way for these purposes by prescription."

There is no doubt that an area of defendants' premises on and adjoining the shore of Mirror Lake had been used for over sixty years for boating, picnicking and the parking of cars. It could be found that access thereto was first obtained by the use of an old driveway which went through the dooryard of a parsonage situated on the premises at least until 1953 when a fence was put up across it. In 1934 or 1935 a new roadway beyond the parsonage (westerly thereof) "on the northerly side of the Lake" was built and used until at least 1963 when part of it was taken by the State to build a fifty-foot access road to the lake.

The evidence is in conflict as to the nature of the use of these ways and of the beach. There was evidence from which it could be found that many users were members of the church, which owned the land, and their invitees; that the church trustees granted permission to use the premises to certain groups and denied their use to others; that the trustees also otherwise exercised authority over the use of the premises by, among other acts, leasing part thereof, placing and servicing trash barrels thereon for many years, and since 1950 or 1952 posting signs regulating the hours during which the area was to be used.

However there was also evidence that the use of these premises during that period was not restricted to church members or their guests but that the public generally without permission of the owners used the premises for bathing and picnicking, including guests and employees of a nearby restaurant and cabin colony. There was also evidence which warranted a finding that the owners knew of this extensive use of the premises by the general public. Without multiplying uselessly the enumeration of specific items of testimony, we hold that the record warranted a finding that for over twenty years the premises were used for bathing and picnicking in such a manner that the owners knew or ought to have known that the right was being exercised not in reliance upon their toleration or permission but without regard to their consent. *Ucietowski* v. *Novak*, 102 N. H. 140, 144. In other

words the evidence warranted a finding that a reasonable man in the place of the owners would have known that the public was occupying the premises under a claim of right. See *Wason* v. *Nashua*, 85 N. H. 192, 198. The fact that the owners and the members of the church and their guests were also using the premises for the same purposes would not prevent the finding of an adverse use by the general public. *Id.*

We agree with the defendants that the record does not show such an exclusive adverse and continuous use of the premises by the plaintiff individually as to warrant a finding that he personally acquired an independent prescriptive right as distinguished from that of the general public. *Peterson* v. *Ramcke*, 140 Conn. 202; 28 C.J.S., Easements, *s.* 15, *p.* 658. See Annot. 111 A.L.R. 221. However this does not prevent him from relying on and asserting the prescriptive right of the general public.

Defendants maintain, however, that the general public is incapable as a matter of law of acquiring an easement by prescription. The basis of this argument is that such an easement presupposes a lost grant and the general public is too indefinite a group to be a grantee. It is true that historically prescription has had the theoretical basis of a lost grant. 3 Powell, Real Property, *s.* 413, *p.* 441. However this idea "is more or less in disrepute" today. *Plaza* v. *Flak*, 7 N. J. 215, 219. See Annot. 27 A.L.R. 2d 332, 339. The stabilization of long continued property uses has motivated the continued application of the doctrine of prescription based on the principles of statutes of limitation which regulate the acquisition of land by adverse possession. 3 Powell, Real Property, *supra*, 453; *Plaza* v. *Flak*, *supra*. We find no basis in our decisions for holding that the general public cannot acquire by prescription rights such as those claimed here. *Perley* v. *Langley*, 7 N. H. 233; *Whitcher* v. *State*, 87 N. H. 405, 413. See *Exeter* v. *Meras*, 80 N. H. 132, 133; 4 Tiffany, Real Property (3d *ed.*) *s.* 1199, *p.* 574.

Defendants also contend that if a prescriptive right of way existed in the newer or westerly roadway it was extinguished when the State took half of it for a public way. This would be true if the parcel taken by the State was condemned for a use inconsistent with the continued availability of the easement in whole or in part. *Kilmartin Realty Inc.* v. *Silver Springs Realty Co.*, 90 R. I. 103; 3 Powell, Real Property, *s.* 426, *p.* 507. However the concurrent existence of a highway and a private way

along the same line is not impossible although it renders the assertion of such a right or part thereof temporarily unnecessary. 3 Tiffany, Real Property (3d *ed.*) *s.* 823, *p.* 382. In the present case the highway and the right of way cover the same space for a portion of the way and will enable the public to use the highway in order to reach that portion of the prescriptive way not a part of the State highway which leads to the bathing and picnicking area.

We hold that the Master properly ruled that the public has acquired a right of way over defendants' premises for ingress and egress to the shore of Mirror Lake for bathing and picnicking. We further hold that the plaintiff as a member of the general public has the right to use for such purposes this right of way which is known as the newer or westerly roadway part of which coincides with the 50-foot highway established by the State.

Defendants argue that they were prejudiced by the allowance of testimony over their objection that the beach at the end of the highway established by the State was not as adaptable to swimming as the claimed right of way. We are of the opinion that the Master could allow this evidence in his discretion as tending to show that the State's easement did not duplicate the claimed prescriptive way and extinguish it.

Finally defendants argue that there are such inconsistencies between the Master's granting of certain of their requests and the wrongful denial of others that they were prejudiced thereby in the ultimate decision. We have considered these findings and rulings in relation to each other, to the record, and to the report of the Master and the requests for findings and rulings which he made and denied as a whole, and we see no prejudicial error as claimed by the defendants.

*Exceptions overruled; remanded.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting*: In my judgment this bill in equity should be dismissed first because there is no evidence of injury to the plaintiff distinct from that suffered by other members of the public, *Currier* v. *Davis*, 68 N. H. 596, *cf. White Mt. &c. Co.* v. *Levesque*, 99 N. H. 15, 18; and secondly because the evidence did not warrant a finding that the owner must have

known that the public use was "not in reliance upon toleration or permission, but without regard to [the owner's] consent" or that the use was of such a character as to interfere with the rights of the owner so that it would have "supposed that the public was occupying . . . under a claim of right." *Wason* v. *Nashua*, 85 N. H. 192, 198, 199. See *Whitcher* v. *State*, 87 N. H. 405, 413; *Stickley* v. *Sodus*, 131 Mich. 510, 517.