Rockingham,
No. 6267.

DONALD M. McINNIS & a.

v.

TOWN OF HAMPTON AND EARL ADAMS.

March 7, 1972.

*Robert G. Tetler* and *Gary W. Holmes* (*Mr. Tetler* and *Mr. Holmes* orally) for the plaintiffs.

*Eugene A. Weibel* (*of Massachusetts*) and *H. Alfred Casassa* (*Mr. Weibel* and *Mr. Casassa* orally) for the defendants.

DUNCAN, J. The plaintiffs, who are husband and wife, own buildings on a lot of land in Hampton leased from the

defendant town. By this bill in equity they seek to invalidate a lease from the town to the defendant Adams of three neighboring lots upon which he is to build an apartment house. The plaintiffs claim rights in the lots (1) individually and as members of the public, by virtue of adverse users for more than twenty years, or in the alternative (2) by virtue of dedication of the lots by the town for public use, and acceptance by the public for such use over a like period, for bathing, sunbathing, and other recreational uses. Additionally, they claim a violation of a contract implied in their lease that their lot is a waterfront lot, and further that the town is estopped to deny them the right to have their premises bordered by vacant land, by reason of representations by the selectmen that the lots in question would never be leased.

Hearing by a Master (*Carleton Eldredge*, Esquire) who found and ruled "that the Town may, as far as this case is concerned, lease the land in question and the defendant Adams may construct an apartment house thereon." The master denied the plaintiffs' requests for findings and rulings that they had acquired prescriptive rights by adverse use individually, and as members of the public. No requests as to the issue of dedication were filed by the parties, and no findings and rulings were made which expressly related thereto.

The Superior Court (*Morris,* J.) in accordance with the recommendation of the master ordered that the plaintiffs' petition be dismissed. All questions of law raised by the plaintiffs' exception to this order, and to the findings and rulings of the master, were reserved and transferred by the presiding justice.

All of the lots are in the area on the north shore of Hampton Beach known as the "Pines", in a block of lots between Ocean Boulevard and the ocean. The lots leased by the town to the defendant Adams are three of four waterfront lots (numbers 287, 288 and 289) which separate other lots, including the plaintiffs', from the ocean. The lots leased to Adams are each 100 by 50 feet, with 50 feet of frontage on the ocean. The most southerly lot (288) is bounded by Atlantic Avenue on the south, which runs easterly from Ocean Boulevard to the waterfront. The northerly lot (289) lies easterly of the southerly half of the plaintiffs' lot (291), which

measures 100 feet on the ocean side and 50 feet on Bradford Street, parallel to Atlantic Avenue. Lot 290 borders the northerly half of the plaintiffs' land, and is occupied by a house that "sets on pillars".

Lots numbers 287, 288 and 289 have been vacant since the early 1930's, when a "great storm" washed away buildings in this location, and the shoreline suffered substantial damage and erosion. By 1969 as a result of shorefront improvements and erosion control (see RSA ch. 216-B), accretions had widened the beach, and the town negotiated the lease to Adams in an effort to improve the area.

The lot occupied by the plaintiffs was first leased to the plaintiff husband and his father in 1951, and the renewal lease running to the plaintiffs herein was executed in 1968, for a term of fifteen years. There was evidence that during the terms of the two leases the lots now leased to the defendant had remained vacant, and were utilized by the plaintiffs and the occupants of neighboring properties for access to the beach for recreational purposes.

The plaintiffs' claim of public and private prescriptive rights in the lots in question meets at the outset the provisions of RSA 477:34 as follows: "Property. No person shall acquire by prescription a right to any part of a town house, schoolhouse or church lot, or of any public ground, by fencing or otherwise inclosing the same or in any way occupying it adversely for any length of time."

The plaintiffs maintain that since the defendant has been engaged for many years in leasing lots to private owners, it holds them in a proprietary capacity, and therefore exercises its powers subject to the same rules which govern private transactions. *Meredith* v. *Fullerton,* 83 N.H. 124, 139 A. 359 (1927); *Segre* v. *Ring,* 103 N.H. 278, 170 A.2d 265 (1961). *See also Hampton &c. Co.* v. *Hampton,* 77 N.H. 373, 92 Atl. 549 (1914); *Hampton* v. *Hampton Beach Improvement Co.,* 107 N.H. 89, 99, 218 A.2d 442, 450 (1966). They argue by analogy to *Elmer* v. *Rodgers,* 106 N.H. 512, 214 A.2d 750 (1965) that because the lots leased to the defendant Adams have not been used for governmental purposes for more than twenty years, the statute should be held inapplicable.

The record, however, does not require acceptance of this

argument. Granted that more than forty years ago the lots were held by the town in its proprietary capacity, it is clear that no proprietary use has been made of them since the disastrous storm of the early 1930's, until the lease to Adams was entered into in 1970. It was findable upon the evidence that the lots were held by the town during the intervening period in a governmental capacity. There was no evidence that the town received any "particular and specific return" from them (*Reynolds* v. *Nashua,* 93 N.H. 28, 31, 35 A.2d 194, 196 (1943)), and public expense which would be incidental to private occupation was avoided. *See Leary* v. *Manchester,* 91 N.H. 442, 446, 21 A.2d 156, 159 (1941). It could properly be found that mere retention of title, without more, was a public use and that the land was held in a governmental capacity during the period when the plaintiffs claimed to have acquired rights by user. *Leary* v. *Manchester supra; Hampton* v. *Palmer,* 102 N.H. 127, 153 A.2d 796 (1959).

The master's denial of the plaintiffs' requests for findings and rulings that they and the public used the lots for recreational purposes "under a claim of right", and his ruling "that the evidence" was "not sufficient to support the relief sought", were warranted by the record and are sustained. So also is the ruling that RSA 477:34 precluded the acquisition of prescriptive rights, even though the town is now "acting in a quasi private or proprietary capacity" in leasing the lots. The burden of proof rested upon the plaintiffs. *Hampton* v. *Palmer supra.* The record did not compel a finding that the burden was met.

Similarly the record does not compel a finding that the town dedicated the lots to public uses which the public accepted by use for more than twenty years. Evidence that representations were made to the plaintiff husband in 1951, and to other lessees at other times, that the shore lots were not for lease fell short of proving dedication by the town. *Claremont &c. Co.* v. *Mills,* 92 N.H. 468, 32 A.2d 823 (1943). Neither the town nor its selectmen took any action that would signify dedication to public use. There was no evidence that improvements were made by the town or that public funds were expended on the lots. *Cf. Koch* v. *Borough of Seaside Heights,* 40 N.J. Super. 86, 97, 98, 122 A.2d 250, 255, 256,

*aff'd,* 22 N.J. 218, 125 A.2d 402 (1956). Limited use by neighboring owners without express permission did not rise to the height of unequivocal acts of acceptance by public use. *Wason* v. *Nashua,* 85 N.H. 192, 155 A. 681 (1931). "The inference is inescapable that the persons using the . . . tract were residents of the neighborhood and not the public at large. Such limited use is not sufficient to support a finding of acceptance by the general public . . . . " *Dormont Borough Appeal,* 371 Pa. 84, 89, 89 A.2d 351, 354 (1952).

Other claims made by the plaintiffs rest upon foundations which are no more secure. Their lease called for an annual rental commonly charged for "ocean front lots", which was twenty dollars more than the rent for other lots. This was not equivalent to a covenant by the town that the lots adjoining on the oceanfront would always remain vacant. The evidence of assurances given by a real estate broker in 1951, and of representations by one selectman in the same year, that nothing would be built on the lots, did not compel a ruling that the town was estopped to lease them in 1970. 28 Am. Jur. 2d Estoppel and Waiver *s.* 122, at 782 (1966). The master expressly ruled against both contentions, finding that "[n]either the plaintiffs' lease, nor the circumstances surrounding its negotiation and execution prohibit these acts by the defendants . . . . "

The claim that reciprocal servitudes were implied by the leases and violated by the town is without merit. *See Sun Valley &c. Co.* v. *Watts,* 98 N.H. 428, 102 A.2d 504 (1954).

We find no error in the findings and rulings of the master.

*Exceptions overruled.*

All concurred.