Rockingham
No. 88-006

DARLENE A. KELLISON AND
CATHY R. SWITZER

v.

JOHN W. MCISAAC AND
MILDRED E. MCISAAC

June 13, 1989

*Taylor, Keane, Blanchard, Lyons, Tybursky & Watson P.A.*, of Portsmouth (*Raymond P. Blanchard* on the brief and orally), for the plaintiffs.

*Sanders and McDermott,* of Hampton (*Lawrence M. Edelman* on the brief and orally), for the defendants.

BATCHELDER, J. The plaintiffs in this case petitioned the superior court to quiet title to a right-of-way over property owned by the defendants. The plaintiffs claim title to the right-of-way by adverse possession and estoppel. After a one-day trial, the Trial Court (*Groff,* J.) denied the relief the plaintiffs requested. We affirm.

The defendants, John and Mildred McIsaac, own property bordering Fowler's Court in Seabrook. The plaintiffs, Darlene Kellison and Cathy Switzer, own property adjacent to the defendants' lot, which lies between Fowler's Court and the plaintiffs' land. The plaintiffs' property has no frontage on any street.

In 1985, the plaintiffs purchased their land from Louis, Sr., and Eldora Mills, who had acquired title from Willie Eaton in 1956. Eaton, Eldora's father, owned a parcel of land comprised of the plaintiffs' lot and the property immediately to the north of that lot. When Eaton divided his property and conveyed the plaintiffs' present lot to Louis, Sr., and Eldora, he granted to them an easement across the remaining portion of his property, which is currently owned by Louis, Jr., and Judy Mills. This easement (hereinafter referred to as the ninety-degree right-of-way) begins at the northeast corner of the plaintiffs' lot, follows Louis, Jr., and Judy Mills' property boundary, ten feet distant from and parallel to the line, in a northerly direction, turns east along the property line at a ninety-degree angle, and continues until it ends at Fowler's Court.

The plaintiffs acknowledged at trial that the ninety-degree right-of-way is not located on the defendants' land and is not the easement which they seek in this case, albeit an easement of record. The right-of-way in dispute, however, is one the plaintiffs claim across the defendants' property, starting near the northeast corner of the plaintiffs' land and running in a northeasterly direction to Fowler's Court at a point roughly ten feet south of the intersection of the ninety-degree right-of-way and Fowler's Court. The location of this easement is the hypotenuse of the rough triangle formed by it and the ninety-degree right-of-way. The plaintiffs and their predecessors in title had used this right-of-way as a "driveway" to their land since approximately 1956. The parties have stipulated that the plaintiffs do not have record title to the right-of-way at issue in this case.

The defendants trace title to their property back to Freeman Fowler. In 1957, the Town of Seabrook acquired title to Fowler's land because of non-payment of taxes. *See* RSA 80:20. The town held title to the land from 1957 until 1964, when it conveyed the property to Mary F. Webb. The deed from the town to Webb included the following language: "Right of way across land on Fowler's Court granted by unanimous vote of . . . Board of Selectmen, on May 24, 1960, to Louis Mills, his ·heirs or assigns. To be incorporated into any future deed." The property passed through several owners before the defendants purchased it from George and Catherine King in 1985. The deed which the defendants took from the Kings stated as follows: "Said premises are subject to a right of way to Louis Mills as reserved in deeds recorded in Rockingham Records Book 1733, Page 149 and Book 1929, Page 279." The deeds referred to at the book and page numbers are, respectively, the deed from the Seabrook tax collector to the Town of Seabrook and the deed from the town to Webb, both of which contain identical language concerning Louis Mills' easement. The defendants thus took title with actual notice of the "driveway" right-of-way.

At trial, which included a view of the property by the court, the plaintiffs argued that they had acquired title to the right-of-way through adverse possession and, alternatively, that the defendants are estopped from claiming that their property is not subject to the right-of-way reserved in their deed. The trial court ruled against the plaintiffs on their adverse possession claim because it found that the use of the right-of-way by the plaintiffs' predecessors in title was permissive. The court determined that adverse possession could not run against a municipality (here Seabrook), a ruling which prevented the plaintiffs' predecessors from having possessed the property for the requisite number of years. The court also determined that the plaintiffs' estoppel argument should fail because they produced "absolutely no evidence" that they relied upon the reservation in the defendants' deed.

■ To obtain title by adverse possession, the plaintiffs must prove by the balance of probabilities twenty years of adverse, continuous, uninterrupted use of the land claimed so as to give notice to the owner that an adverse claim is being made. *Vigeant v. Donel Realty Trust*, 130 N.H. 406, 408, 540 A.2d 1243, 1243 (1988). The trial court found that the plaintiffs and their predecessors in title had used the disputed right-of-way in a continuous and uninterrupted manner from 1956 until the defendants erected their fence. The court held, however, that the

deposition testimony of Eldora Mills indicated that the Millses' use of the right-of-way was permissive, not adverse. As support for its conclusion, the court cited how in 1977 George King, the defendants' immediate predecessor in title, told the Millses that he could construct a fence to block the right-of-way but that he would curve it, as a favor to them, so they could continue to use it. The Millses at that time apparently did not claim a right to the right-of-way. From the deposition testimony concerning this incident in 1977, the court inferred that Mrs. Mills believed that she was using the right-of-way permissively during the whole time she owned the property.

■ The plaintiffs, relying on *Zivic v. Place*, 122 N.H. 808, 451 A.2d 960 (1982), challenge the court's reasoning by arguing that trespassory use constitutes adverse use sufficient to satisfy the hostility requirement of adverse possession. The plaintiffs are correct, *see Ellison v. Fellows*, 121 N.H. 978, 981, 437 A.2d 278, 280 (1981), as far as they go. The *Zivic* case, however, also stands for the proposition that the requisite continuous nature of the trespassory use can be broken if the actual owner communicates permission to the adverse user to cross the owner's land. *Zivic*, 122 N.H. at 812–13, 451 A.2d at 962–63. In the present plaintiffs' case, the trial court found that King, the defendants' predecessor in title, had granted his permission for Mrs. Mills, the plaintiffs' predecessor in title, to use the right-of-way in 1977. This permission broke the twenty-year statute of limitations period required to obtain title by adverse possession. Because there is no evidence that the Millses put King on notice that they were making an adverse claim after King constructed his curved fence in 1977, the use after that time was permissive, not hostile, and does not count toward the twenty-year adverse period. *Zivic*, 122 N.H. at 813, 451 A.2d at 963. The trial court was correct in ruling that the plaintiffs' predecessor used the right-of-way permissively after 1977.

■ The plaintiffs additionally argue that the trial court improperly relied on the deposition testimony of Mrs. Mills to determine that the Millses' use of the right-of-way was permissive. The plaintiffs complain that Mrs. Mills' testimony was "confusing, contradictory, and subjective," and that the court erred by imputing to Mrs. Mills knowledge of the legal meaning of "right-of-way" which she did not have. Although we agree with the plaintiffs that the deposition has its ambiguities, we reject their arguments for two reasons. First, the plaintiffs offered the deposition into evidence and cannot now complain about its use

680

merely because the testimony was interpreted against them. Second, and more importantly, we conclude that a reasonable person could interpret the deposition testimony to favor the defendants, as the trial judge did. *See U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 153, 461 A.2d 85, 88 (1983). We therefore find no error.

Finally, the plaintiffs argue that even if the use of the right-of-way was permissive after King constructed the fence, by that time they had adversely possessed the right-of-way for the twenty-year prescriptive period. They contend that they had used the right-of-way from 1956 to 1977, one year longer than necessary. The trial court, however, inferred from Mrs. Mills' testimony concerning the construction of the Kings' fence in 1977 that she believed that her use was permissive from 1956 onward. The court also ruled that the Town of Seabrook's ownership of the property from 1957 to 1964 interrupted any adverse use the Millses might have had because a claim of adverse possession will not lie against a municipality.

■ The trial court improperly held that the Millses' use of the right-of-way was permissive based on Mrs. Mills' state of mind about that use. The subjective intent or the motives of the adverse possessor do not determine the success or failure of the adverse possession claim. Rather, "[t]he acts of his entry onto and possession of the land should, regardless of the basis of the occupancy, alert the true owner of his cause of action." *Hewes v. Bruno*, 121 N.H. 32, 34, 424 A.2d 1144, 1145 (1981). In this case, the trial court found that the plaintiffs and their predecessors in title used the property in a continuous and uninterrupted fashion from 1956 until the defendants stopped that usage. If not for the town's ownership of the land from 1957 until 1964, the plaintiffs might have succeeded in their adverse possession claim.

The trial court's ruling that title by adverse possession cannot be obtained against a municipality was, in this instance, correct. Although we have not had occasion to address this specific issue before, we have intimated that a claim for adverse possession could succeed where a municipality holds property in a proprietary rather than a governmental capacity. *See McInnis v. Hampton*, 112 N.H. 57, 59–60, 288 A.2d 691, 693–94 (1972). Such a rule appears to be in line with the rule in other jurisdictions that prescriptive rights cannot be obtained against municipalities holding land for public use. 3 AM. JUR. 2d *Adverse Possession* § 270, at 360 (1986); 55 A.L.R. 2d *Adverse Possession* § 34, at 612 (1957). Further, RSA 477:34 supports this view, providing that "[n]o person shall acquire by prescription a right to any part of a town house, . . . or of any

*public* ground by . . . occupying it adversely for any length of time." (Emphasis added.) *See also* RSA 539:6 (no right shall be acquired by adverse possession against the State). Although the plaintiffs in this case are not seeking property rights by adverse possession against the Town of Seabrook, but instead want their predecessors' years of adverse use to count towards the limitations period, we believe that if the property was held for a public use, the limitations period was interrupted from 1957 to 1964, the years of the town's ownership.

The next question is whether the town's ownership of the property during that period constituted holding the property for public use. In *McInnis supra*, this court upheld a finding that "mere retention of title, without more, was a public use." 112 N.H. at 60, 288 A.2d at 694. The court in *McInnis* denied the plaintiffs' claims of prescriptive rights over vacant beachfront property owned by the defendant town which it had leased to others at one time, but had not leased during the period that adverse possession was claimed. The court determined that the property was held in a governmental, not proprietary capacity. *Id.* We hold, therefore, that a municipality holding title to land through tax foreclosure proceedings, without more, holds the property in a governmental capacity for public use, thereby preventing the running of the statute of limitations in an adverse possession case. *See also* 55 A.L.R. 2d § 26, at 595 (1957) (no adverse possession against State when State holds title to land because of unpaid taxes). The trial court correctly held that the Town of Seabrook's ownership of the defendants' property interrupted the running of the twenty-year prescriptive period.

The plaintiffs argue alternatively that estoppel prevents the defendants from denying the language in their deeds granting the plaintiffs access to the right-of-way. The concept of estoppel has engendered much confusion. *See 700 Lake Avenue Realty Co. v. Dolleman*, 121 N.H. 619, 624, 433 A.2d 1261, 1264 (1981). As a general matter, four different types of estoppel may affect rights in real property: (1) estoppel by records; (2) estoppel by deed; (3) estoppel by recitals in instruments; and (4) estoppel *in pais*, or equitable estoppel. *Id.* In this case, the plaintiffs' amended petition refers to estoppel generally, while in their brief to this court they refer to equitable estoppel. The trial court determined that the plaintiffs' reference to an estoppel theory must have meant equitable estoppel, not estoppel by deed. We hold, however, that this case properly is governed by the doctrine of estoppel by recitals in

instruments. The plaintiffs' apparent mislabeling of their argument does not dilute its application to this case.

 The doctrine of estoppel by recitals in instruments provides that "a grantee is estopped to deny the validity of any outstanding interest to which his deed recites that the conveyance . . ." is subject. 31 C.J.S. *Estoppel* § 38(b)(3) (1964); *see also* 5 G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 2523 (1979) repl.); *Keyes v. Baird,* 88 N.H. 449, 451–52, 190 A. 707, 708 (1937) (implying that estoppel by recitals could apply). This rule applies to recitals concerning easements. 31 C.J.S. *Estoppel supra.*

 Merely clarifying which estoppel doctrine appropriately applies to this case, however, does not mean that the plaintiffs prevail. The defendants argue that because the plaintiffs did not rely on the reservation in the deed, their estoppel claim must fail. *See Kirkpatrick v. Jones,* 122 N.H. 438, 440, 446 A.2d 80, 81 (1982). We agree. The trial court specifically found that the plaintiffs had failed to produce any evidence of reliance on the language in the defendants' deed. After reviewing the record, we agree with the court's finding. By not demonstrating reliance, the plaintiffs' estoppel argument fails.

*Affirmed.*

All concurred.