Hillsborough
No. 81-078

# Louis J. Zivic

## v.

# Thomas B. Place & a.

September 10, 1982

*Edward P. McDuffee*, of Hollis, for the plaintiff, filed no brief.

*Charles N. Eggert*, of Francestown, by brief and orally, for the defendants Thomas B. Place, Scott T. Place, Brooks C. Place, Kimberlee R. Place, and Todd P. Place.

*Woodbury & Rowe*, of Milford (*David Woodbury* on the brief and orally), for the defendants Woodbury Forest, Inc., Carolyn F. Woodbury and Ethel F. Woodbury.

PER CURIAM. This is a bill in equity under RSA 498:5-a (Supp. 1979). The plaintiff, Louis J. Zivic, seeks a determination of the rights of the parties as to the use of two private ways, being the east and west branches of the so-called "new road," which extend through his land and the land of Carolyn F. Woodbury and Ethel F. Woodbury at Pleasant Pond in Francestown. He seeks an order permanently enjoining the defendant Thomas B. Place, owner of certain adjacent lots (known as the "south camp" and "shore lots"), from using more than one of these ways.

A rough sketch has been attached as an appendix to this opinion to help identify the owners of the lots on Pleasant Pond which are involved in this proceeding. The ways to and over the relevant lots are also shown.

Upon the plaintiff Zivic's motion, Ethel F. Woodbury and the present owner of the James T. Woodbury land, Woodbury Forest, Inc., were joined as parties defendant. It was agreed that the "north camp" lot is now owned by Scott T. Place, Brooks C. Place, Kimberlee R. Place and Todd P. Place, children of Thomas B. Place.

I. *Hearing, View, Findings and Rulings.*

The Master (*Thomas E. O'Neill*, Esq.), after two days of hearings and a view of the premises, made findings and rulings. He filed a report with recommendations which were approved by *Flynn*, J., who issued decrees in accordance therewith.

The master found and ruled as follows regarding the east branch of the "new road":

"A. *Use of 'new road' for north camp*

[T]hat neither Thomas B. Place nor the present record owners of the North camp [Thomas' four children] have a right of way for ingress to and egress from the north camp lot over the portion of the 'new road' [the east branch] extending from Poor Farm Road to the Zivic land because the use by the predecessor in title, Mahlon R. Mason, did not establish an easement by prescription over said road."

The master recommended that the present owners of the north camp be restrained from using the "new road" for access to their property.

The master also found the following:

"B. *Use of 'new road' for access to Place shore lots and south camp lot*

[T]hat the evidence is insufficient to establish an easement by prescription for the use of the east branch of the 'new road' for access from the Poor Farm Road to said shore lots [that is, lots owned by Thomas Place situated between the 'south camp' lot and the 'north camp' lot] and the south camp lot."

The master, however, found the following with respect to the west branch of the "new road":

"C. *Use of 'new road' and west branch for access to south camp*

[T]hat the use of Thomas B. Place of the west branch for access to the south camp was, considering the nature of the property, continuous and uninterrupted for a period in excess of 20 years and was sufficiently adverse and open to acquire a right of way by prescription on the 'new road' and its west branch for ingress to and egress from the south camp and Poor Farm Road."

The master recommended that Thomas B. Place be decreed to have such an easement which extended over the land owned by Woodbury Forest, Inc., Louis J. Zivic, Carolyn F. Woodbury, and Ethel F. Woodbury.

Finally, the master found as follows:

"D. *Use of roads for purposes other than access*

Thomas B. Place testified as to the use of a well [shown on

the attached sketch] on his land on the 'old road' . . . . To reach this well by vehicle from the south camp it is necessary to use the west branch to it[s] junction with the east branch and proceed north on the east branch to its junction with the 'old road' on Place land.

The master finds that Mr. Place has established an easement by prescription to use the west branch and the east branch to his land to pass by vehicle to and from said well and the south camp in the manner and for the purposes heretofore used."

The master recommended that Thomas B. Place be restrained from using either the "new road" or its branches for purposes not listed in the court's decree.

## II. *Appeals*

The plaintiff Zivic filed an appeal on March 17, 1981. However, his exceptions were declared waived on June 15, 1981, for failure to pay the transcription fees. *See* Sup. Ct. R. 15. Zivic remained a party for purposes of the cross-appeals filed on March 26, 1981, on behalf of Thomas B. Place and the Woodbury defendants. Nevertheless, a transcript of the testimony at trial was not transferred to this court.

## III. *Woodbury Appeal*

The Woodbury defendants seek by their appeal that this court set aside the master's recommendation "C," that is, that Thomas B. Place be decreed to have acquired by prescription a right-of-way on the "new road" and its west branch for ingress to and egress from his "south camp" and Poor Farm Road. For the reasons hereinafter stated, we sustain the Woodburys' exception and reverse the court's ruling concerning recommendation "C."

As a basis for the above recommendation, the master stated in his report that Thomas B. Place testified that he had constructed the so-called west branch in 1949 to provide access to his "south camp" by motor vehicle so that he could rent it to others. The branch began at a point on land owned by James T. Woodbury, and now by Woodbury Forest, Inc., and passed through a four-and-one-half-acre lot, now consisting of the Zivic and the Carolyn and Ethel Woodbury lots.

The master further found that Thomas B. Place did not ask permission to build the road from the owners of the Woodbury land and testified that he believed he had a right to build the road without needing to ask anyone's permission.

Harry G. Woodbury, a predecessor in title to the land now owned by Woodbury Forest, Inc., had knowledge of the west branch in 1953 when he became owner of this land, on which a portion of the branch was located. The master found that Mr. Woodbury acquiesced to the use of Thomas B. Place of the "new road" and the west branch for access to the "south camp." Mr. Woodbury was aware of the road from its initial construction but made no objection to its use and never discussed the road with Thomas B. Place until 1976. As noted, the master found that "the use of Thomas B. Place of the west branch for access to the south camp was, considering the nature of the property, continuous and uninterrupted for a period in excess of twenty years and was sufficiently adverse and open to acquire a right-of-way by prescription on the 'new road' and its west branch for ingress to and egress from the south camp and Poor Farm Road."

The Woodburys' exception to the above findings and rulings of the master is based largely on the legal effect of the receipt by the defendant Thomas B. Place of a letter, an exhibit in the case, written to him by Carolyn F. Woodbury, dated September 11, 1968. It read in part as follows:

> "I am selling 100′ frontage of my pond property to Henry and June (Clark) Brown. The piece Henry wants runs from my southerly boundary. It is his wish that a road be cut into your camp property to the north, thus avoiding travel through his yard. I had given that road little or no thought until this summer; but as I plan to build myself, I, too, will want that road cut off at my northern boundary.
>
> I spoke to my lawyer . . . and he assures me that it is both reasonable and legal to request that you and your rentees use the original right of way, along the brow of the hill, provided for in your deed.
>
> I hope this won't cause you any undue hardship. *And naturally, you're welcome to continue using the road through my land until such time as you can have your own put in.* I'm sorry I find it necessary to make this request, but I'm sure you realize my position. I hope eventually to get rid of that rather unsightly diagonal cut myself and make my approach from the east. Meantime, thank you for your prompt cooperation in the matter."

(Emphasis added.) The record is ambiguous as to whether or not Thomas B. Place advised Carolyn F. Woodbury that he was not

going to accede to her request. It is clear, however, that the letter written by her in September 1968 came nineteen years after the construction of the west branch by Thomas B. Place.

The Woodburys focus on the provisions in the letter allowing Thomas B. Place to use the land temporarily until he constructed his own road. In view of Thomas B. Place's failure to take positive action alerting Carolyn F. Woodbury that he intended to use the land against her wishes, they claim that his use of the land was permissive for a short period after the issuance of the letter. As a result, they argue that his use of the land, which had begun in 1949, was not continuously adverse for a period of twenty years.

■■ We find this argument persuasive. We have consistently held that in order to maintain a successful claim based on adverse possession, the possessor must "give notice to the record owner that an adverse claim was being made" to the land. *Page v. Downs*, 115 N.H. 373, 374, 341 A.2d 767, 768 (1975); *see Arnold v. Williams*, 121 N.H. 333, 334, 430 A.2d 155, 156 (1981); *Hewes v. Bruno*, 121 N.H. 32, 33–34, 424 A.2d 1144, 1145 (1981). The requirement of adverse use necessitates a continuous trespassory use for twenty years. See *Ellison v. Fellows*, 121 N.H. 978, 981, 437 A.2d 278, 280 (1981).

■ In this case, the record does not reveal that Thomas B. Place took any action, following the issuance of the letter by Carolyn F. Woodbury, to put her on notice of his adverse claim. Although Thomas B. Place may have held the land adversely for nineteen years prior to the issuance of the letter, a reasonable person would have concluded that his use was permissive for a short period after the issuance of the letter. Furthermore, the granting of permission by Carolyn F. Woodbury to use her land precluded her from successfully bringing an action against Thomas B. Place regarding the legality of his subsequent use. Thomas B. Place's use of the land for a brief period in 1968 and 1969 therefore was not trespassory in nature. *See United States v. Certain Land in City of Portsmouth*, 247 F. Supp. 932, 934 (D.N.H. 1965) (trespassory use consists of wrong that may be remedied through legal action). As a consequence, we hold that the use of the land was not continuously adverse for twenty years, and we sustain the Woodburys' exception.

IV. *Appeal of Defendants Place*

The basis of a right-of-way, claimed by the owners of the "north camp," over the Zivic and Woodbury property, was stated in their notice of cross-appeal to be the following:

"In 1937, defendant Thomas Place constructed a road [east branch] starting at a town road and traversing lands

now belonging to Plaintiff Zivic and defendants Woodbury to serve the south camp of Thomas Place and land beyond belonging to his aunt, Alice Place. The road was a convenient access to a camp beyond the Alice Place land [north camp] and Dr. Mahlon Mason [then owner of that camp] asked Thomas Place if he would mind if the Mason family used the road. Thomas Place granted permission. He had no authority to grant permission to cross the land of Zivic and Woodburys. Although Dr. Mason knew he was crossing land of other owners, he asked none of them for permission nor was such permission granted. For more than 20 years, the Mason family made continuous and uninterrupted use of the road. Present and predecessor owners of the Zivic and Woodbury lands knew of the use but did nothing."

The master properly found that Thomas B. Place had not himself acquired an easement to use the "new road" and its east branch to reach the "north camp" because he had not used them to reach the north camp for the required twenty years of adverse use. If Thomas B. Place had a prescriptive right to use the portion of the "new road" on the Zivic and Woodbury land for access to the north camp, it would have to be based upon Dr. Mason's use from 1948 to 1970 for ingress and egress to and from the north camp which he owned.

The master properly held that to establish an easement by prescription a use must be of an adverse character. Since Dr. Mason based his use upon a "permission" given by Thomas B. Place, although not effective as to the actual landowners, it nevertheless disclosed a permissive attitude as to Mason's use of the ways. Consequently, the master found that neither Thomas B. Place, nor the appellants, the present owners of "north camp," had a right-of-way for ingress to and egress from the north camp lot over the "new road" and its east branch because the use by the predecessor in title, Dr. Mason, did not establish an easement by prescription over said road to reach the north camp lot.

The appellants rely on the testimony of Dr. Mason reported by the master that he and his friends and relatives used the "new road" and the east branch continuously from 1948 to 1970 for ingress and egress to and from the north camp. Mason testified that he knew that the "new road" crossed Woodbury land but never asked them for permission to use the road.

Harry G. Woodbury, owner of the land in question from 1953 to 1979, confirmed the testimony of Dr. Mason as to the use of the road and further testified that he was aware of such use, never did

anything about it, and, in fact, was glad to see the improvement of the road made by the Places.

The appellants agree that the master properly ruled that the permission given to Dr. Mason by Thomas B. Place was ineffective to bind the Woodburys, who were the owners of the land. However, they maintain that the master erred in ruling that the use of the ways made by Dr. Mason could not be regarded as adverse to the true owners.

In *Hewes v. Bruno*, 121 N.H. at 34, 424 A.2d at 1145, we held that:

> "It is unnecessary to inquire into the motives of a possessor. The acts of his entry onto and possession of the land should, regardless of the basis of the occupancy, alert the true owner of his cause of action."

Furthermore, this court held in *Ellison v. Fellows*, 121 N.H. at 981, 437 A.2d at 280, that an adverse use does not require overt antagonism between the user and the property owner. As mentioned above, we stated in *Ellison* that "the requirement of adverse use necessitates trespassory use." *Id.*, 437 A.2d at 280. As an element of all adverse use, trespassory use consists of "a wrong which the fee holder can prevent or for which he can obtain damages by means of legal action." *United States v. Certain Land in City of Portsmouth*, 247 F. Supp. at 934; *see* C.J.S. *Easements* § 14, at 654. Because the Woodburys were aware of Dr. Mason's wrongful use of their land (which then included the Zivic lot) and never did anything about it, Dr. Mason's use was a "trespassory use" with respect to the property now owned by Zivic and the Woodburys. The use was therefore adverse and resulted in a right-of-way in Dr. Mason and his successors, the present owners, the defendants Place.

We set aside the decree that the present owners of the north camp "be restrained from using the 'new road' for access to the north camp." We hold that the present owners of the north camp have an easement by prescription for travel from the Poor Farm Road over the "new road" and its east branch to and from the north camp over lands of Zivic and Woodbury.

We realize that the master and the superior court did not have the benefit of some opinions now relied on, when their rulings were made. However, in defining what the law is, these later court opinions and decisions were saying what the law always was, and, consequently, their principles may apply to this case, which was on

appeal and still pending. *Cf. Hampton Nat'l Bank v. Desjardins*, 114 N.H. 68, 73, 314 A.2d 654, 657–58 (1974).

*Appeals sustained.*