NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2017-0381


EDWARD WHITE

v.

STATE OF NEW HAMPSHIRE

Argued: April 17, 2018
Opinion Issued: September 18, 2018


Brennan, Lenehan, Iacopino & Hickey, of Manchester (Michael J. Iacopino and Jenna M. Bergeron on the brief, and Mr. Iacopino orally), for the petitioner.


Gordon J. MacDonald, attorney general (Dianne Martin, assistant attorney general, on the brief and orally), for the State.


HICKS, J. Following an evidentiary hearing on the merits, the petitioner, Edward White, appeals an order of the Superior Court (Abramson, J.) denying his petition to be relieved of the obligation to register as a sex offender in New Hampshire. We affirm.

The relevant facts follow. In 1985, the petitioner was convicted in Massachusetts of two counts of indecent assault and battery arising from

allegations that he sexually assaulted an eight-year-old female. He served three years in prison and then was paroled. At the evidentiary hearing, he represented that, during his parole, he successfully completed a sex offender treatment program.

In January 1994, as a New Hampshire resident, the petitioner became subject to lifetime registration as a sex offender for his Massachusetts convictions. See RSA 632-A:11-:19 (1993) (repealed and recodified at RSA 651-B:1-:12 by Laws 1996, 293:2). He was later classified as a Tier III offender. See Laws 2008, 334:1; see also RSA 651-B:1, X (2016).

Because of constitutional limitations, a Tier III offender, like the petitioner, whose convictions pre-date the establishment of the sex offender registry, may be subject to the registration requirement "only if he is promptly given an opportunity for either a court hearing, or an administrative hearing subject to judicial review, at which he is permitted to demonstrate that he no longer poses a risk sufficient to justify continued registration." Doe v. State of N.H., 167 N.H. 382, 411-12 (2015); see RSA 651-B:6, V (Supp. 2017). RSA 651-B:6, V sets forth the process affording such an offender that opportunity.

Once an offender has completed "all the terms and conditions of the sentence, including any period of supervised release," he or she may file a petition to be relieved of the registration requirements. RSA 651-B:6, V(a). The petition must be accompanied by, among other items, "a risk assessment prepared by a qualified psychiatrist or psychologist at the offender's expense, which indicates that the petitioner is not a danger to the public and no longer poses a risk sufficient to justify continued registration." Id.

After the petition has been filed, the court must hold a hearing at which the victim may appear personally or through a representative. RSA 651-B:6, V(b). The court "may grant the petition if the offender": (1) "has not been convicted of any subsequent offense requiring registration"; (2) "has successfully completed any period of supervised release, probation, or parole"; (3) "has successfully completed an appropriate sex offender treatment program"; and (4) "has demonstrated that he or she is no longer a danger to the public and no longer poses a risk sufficient to justify continued registration." RSA 651-B:6, V(c). If the petition is denied, the offender may not file another petition "for 5 years from the date of denial." Id.

The risk assessment in the instant case was completed by Carol J. Ball, Ph.D. Ball reported that she administered two assessments to the petitioner: (1) the Millon Clinical Multiaxial Inventory-III (MCMI-III); and (2) the Abel Assessment of Sexual Interest (the Abel Assessment).

According to Ball, "the MCMI-III consists of 175 items." (Italics omitted.) A person's responses to those items are then "matched against . . . diagnostic

subgroups that are described in the Diagnostic and Statistical Manual of Mental Disorders." (Italics omitted.) Ball stated that the MCMI-III "yields personality profiles that correspond to standard diagnostic groups, including major mental illness, character problems, clinical syndromes . . . , and substance abuse." (Italics omitted.)

Ball reported that the petitioner's MCMI-III profile "suggests a personality style in which he courts undeserved blame and criticism and feels that he's being cheated, misunderstood and unappreciated." Ball stated that "no distinctive Axis I clinical syndrome" appeared in the petitioner's "diagnostic picture" and that "no specific personality configuration is evident" from the MCMI-III assessment, but that he "does demonstrate some self-defeating Personality Traits, and Obsessive Compulsive and Avoidant Personality Features."

According to Ball, the Abel Assessment is "used widely to assess a person's sexual interest patterns." Ball reported that "[o]ngoing research has demonstrated" the assessment's "validity, reliability, and resistance to faking." (Italics omitted.)

Ball described the Abel Assessment as "a computer-based assessment system that indirectly measures and analyzes the relative strength of normal and deviant sexual interests." (Italics omitted.) It "requires a person to complete an extensive questionnaire[ ] and to rate 160 slides while his . . . physiological responses are recorded and analyzed." (Italics omitted.) "The final analysis yields a relative ranking of sexual interests in 22 distinct areas, including age-appropriate sexual interests, and deviant interest in variously aged children of both sexes." (Italics omitted.)

According to Ball, the Abel Assessment shows that the petitioner displays "interest in adult females as well as interest in prepubescent females." However, she stated that "[o]n the Cognitive Distortion Scale," which measures "beliefs and attitudes often held by men who justify their sexual behavior with underage males or females," the petitioner's score was 12%. She described a score of 40% or more as "highly problematic" and stated that the petitioner's score "is not considered to be problematic." (Quotation omitted.) Ball observed that, on a different scale, which measures a person's unwillingness to admit to violating common social mores, the petitioner had a high score, which she stated suggested "that he wanted to present himself in a favorable light." Ball did not consider this to be "a serious" issue "because many persons undergoing a forensic assessment . . . achieve high scores" on that scale.

Ball concluded that, given the petitioner's "sexual history, it appears that [the Abel Assessment] is an accurate measure of his sexual history over his lifetime." Although she acknowledged that "deviant interest in younger children would be of concern in some cases," it was not a concern in this case

3

because: (1) at the time of the assessment, the petitioner was 60 years old and the recidivism rate for child molesters such as him is "nearly zero"; (2) his convictions occurred more than 30 years ago; (3) he has not had any subsequent charges or accusations of sexual misconduct; (4) he has been in a long-term marriage; and (5) he has "lived a pro-social life style" since his 1990 release from prison. Ultimately, Ball opined that the petitioner "is currently a minimal risk to reoffend and therefore does not meet criteria for continued listing on the Sex Offender Registry." (Bolding omitted.)

Following the evidentiary hearing, the trial court concluded that the petitioner failed to meet his burden of proof. The court found it "especially troubling" that, according to the Abel Assessment, the petitioner remains sexually interested in prepubescent females because his prior convictions arose from his sexual assault of a prepubescent female. The court also found the petitioner's score of 12% on the Cognitive Distortion Scale "somewhat problematic" in light of the Abel Assessment results. Accordingly, the trial court determined that the petitioner had failed to demonstrate that he is no longer a danger to the public and no longer poses a risk sufficient to justify continued registration. This appeal followed.

In reviewing a trial court's decision rendered after a hearing on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. See O'Malley v. Little, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of the witnesses, and determining the weight to be given evidence. Id. We review the trial court's application of the law to the facts de novo. Id.

The parties agree that we review the trial court's decision on a petition brought under RSA 651-B:6, V under our unsustainable exercise of discretion standard. See State v. Lambert, 147 N.H. 295, 296 (2001). To establish that the trial court unsustainably exercised its discretion, the petitioner must demonstrate that the court's ruling was "clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted). When we review a trial court decision under this standard, we examine whether the record establishes an objective basis sufficient to sustain the trial court's discretionary decision. See id.

On appeal, the petitioner first argues that the trial court erred because it: (1) "failed to give due weight to [Ball's] uncontroverted expert testimony"; (2) substituted its own "unqualified judgment" for that of Ball; and (3) improperly found the petitioner's 12% score on the Cognitive Distortion Scale to be "somewhat problematic." (Quotation omitted.) Underlying these arguments is

4

the petitioner's apparent belief that, because Ball was the only expert who testified, the trial court was required either to accept or reject her testimony in its entirety.

To the contrary, as the trier of fact, the trial court was entitled to "accept or reject such portions of the evidence presented as [it] found proper, including that of the expert witness[ ]." Tennessee Gas Pipeline Co. v. Town of Hudson, 145 N.H. 598, 602 (2000) (quotation omitted). It "could have disbelieved any part of the testimony" given at the hearing "even if no evidence was introduced to rebut it." Roy v. Perrin, 122 N.H. 88, 95 (1982). "The fact that some testimony was that of an expert [does] not compel a different conclusion." Id.; see Brooks v. Allen, 168 N.H. 707, 715 (2016) (recognizing that a trier of fact is not compelled to believe even uncontroverted evidence).

To the extent that the petitioner asserts that the trial court had no basis in the record to reject portions of his expert's testimony, we disagree. As the State correctly observes, "[t]he trial court was faced with an expert report and testimony that were . . . contradictory." For instance, although Ball testified that she found the Abel Assessment results to be "somewhat questionable," she also testified that the assessment is "valid" by "technical standards." In addition, she relied upon the Abel Assessment in her written report, and specifically stated that "[o]ngoing research has demonstrated" the assessment's "validity, reliability, and resistance to faking." (Italics omitted.)

Similarly, although Ball reported that "by age 60[,] the recidivism rate for child molesters such as [the petitioner] [is] nearly zero," she also agreed that "men at any age can commit sex offenses against pre-pubescent females."

Likewise, although in her report, Ball stated that the petitioner had "some serious health problems," at the hearing, she admitted that she based that statement upon the petitioner's self-report, that she did not review any of his medical records, and that he did not "look unhealthy." Moreover, the court observed that the petitioner "appeared to be in good health at the hearing" and that he "testified that he has numerous hobbies, including active ones, such as golf and bicycle riding."

It was for the trial court to resolve the contradictions in Ball's testimony and report. See O'Malley, 170 N.H. at 275; Tennessee Gas Pipeline Co., 145 N.H. at 602. In so doing, the trial court was entitled to rely upon its observations of Ball and the petitioner as witnesses. See In re Deven O., 165 N.H. 685, 690 (2013). Because we cannot say that no reasonable person could have resolved the conflicting evidence as the trial court did, we uphold its decision. See O'Malley, 170 N.H. at 275; see also Roy, 122 N.H. at 95.

The petitioner next asserts that the trial court erred because it: (1) did not understand the "statutory provisions under which [he] sought relief" when

5

the evidentiary hearing took place; (2) considered conduct for which he had been acquitted; and (3) faulted him for being unable to produce records that no longer exist. The trial court's narrative order does not support those assertions. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (explaining that we interpret a trial court order de novo).

In its order, the trial court quoted and correctly applied RSA 651-B:6, V, demonstrating that it understood the statute. Moreover, the only mention made of the acquitted conduct was when the trial court specifically acknowledged that the petitioner had been charged with, but acquitted of, certain conduct. We disagree with the petitioner that the mere mention of the acquitted conduct demonstrates that the trial court relied upon it when determining that he failed to meet his burden of proof. We also disagree with the petitioner that the trial court's accurate statement that "[b]ecause of the passage of time, there are no parole records available to corroborate petitioner's representation" that he completed a sex offender treatment program, demonstrates that the trial court somehow faulted him for failing to produce those records.

The petitioner next contends that the trial court "flagrant[ly] mischaracteriz[ed] . . . Ball's analysis and conclusions" by stating that "Ball had not identified whether [his] score on the cognitive distortion scale was 'problematic.'" (Emphasis added.) The petitioner mischaracterizes the trial court's statement. The trial court stated that Ball "did not testify" as to the "range of scores [that] would lead to an individual being labeled as 'problematic' or 'somewhat problematic.'" (Emphasis added.) This was an accurate statement. As the petitioner conceded at oral argument, Ball did not testify as to that subject. Contrary to the petitioner's contention, therefore, the trial court's statement does not demonstrate that its ruling "resulted . . . from a glaring mistake of fact." Moreover, the trial court did not determine that the petitioner's 12% score on the Cognitive Distortion Scale was "somewhat problematic" standing alone. Rather, the court decided that the score was "somewhat problematic" when considered with the results of the Abel Assessment.

We have reviewed the petitioner's remaining arguments and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). Because the record submitted on appeal establishes an objective basis sufficient to sustain the trial court's denial of the petition, we uphold its decision. See Lambert, 147 N.H. at 296.

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.

6