# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0114, <u>Ajit Kumar v. SNHS Management Corporation</u>, the court on March 9, 2022, issued the following order:**

Having considered the briefs and oral arguments of the parties, we conclude that a formal written opinion is unnecessary in this case. The plaintiff, Ajit Kumar, appeals an order of the Superior Court (<u>Temple</u>, J.) entering judgment for the defendant, SNHS Management Corporation, on the plaintiff's petition to quiet title by adverse possession. The plaintiff argues that the trial court erred by denying his adverse possession claim because his use of the defendant's property was not continuously adverse for the requisite twenty-year statutory period. We affirm.

The trial court found the following facts. The plaintiff owns a single family home on a parcel of property located in Nashua. The defendant owns an abutting parcel, which it uses for commercial purposes. At issue here is a narrow strip of land located at the boundary of the two properties (disputed parcel). The disputed parcel contains a retaining wall and a chain-link fence, as well as part of a bulkhead that is attached to the rear of the single family home. The wall, the fence, and the bulkhead were installed before the parties purchased their properties, and it is uncertain who installed them or when they did so. The defendant is the record owner of the disputed parcel.

The defendant purchased its property from a trust in 2001. The purchase and sales agreement was contingent upon the defendant obtaining a variance and site plan approval from the city's zoning and planning boards. In February 2001, prior to obtaining those approvals, the defendant's former development director (director) met with neighboring property owners, including the plaintiff's predecessors-in-title, the Buckmires. At the meeting, the director informed the Buckmires that the wall, the fence, and the bulkhead were part of the property that it intended to purchase. The director also stated that the defendant would not take any action against the Buckmires regarding the disputed parcel so long as the Buckmires did not object to its zoning and planning applications. The Buckmires verbally agreed. The defendant subsequently obtained the necessary approvals and completed the purchase in May 2001.

In 2003, the Buckmires sold the property to an intervening owner, from whom the plaintiff purchased the property in 2012. At the time of the

purchase, the plaintiff believed that the retaining wall reflected the rear boundary of his property. In 2016, the defendant contacted the plaintiff about the disputed parcel, informing him of the encroachment issues and expressing concern about the deteriorating condition of the retaining wall. Shortly thereafter, the plaintiff listed his property for sale. The defendant offered to purchase the property, but the plaintiff ultimately decided not to sell it. The parties also discussed improvements to the disputed parcel, but those discussions proved unsuccessful. At some point thereafter, the plaintiff leaned a stockade fence against the chain-link fence.

In February 2020, the plaintiff filed an action to quiet title, claiming title to the disputed parcel by adverse possession. The defendant filed an answer denying most of the allegations. The defendant also filed a counterclaim seeking a declaration that it owns the disputed parcel and an injunction enjoining the plaintiff from using its property. In February 2021, following a bench trial, the court denied the plaintiff's petition to quiet title.

The court based its decision upon its finding that, at the February 2001 meeting, the defendant "gave permission to the [Buckmires] . . . to use the disputed area." The court determined that, although the defendant did not yet own the disputed parcel in February 2001, the defendant's "permission was to take effect and remain in effect after it closed on the sale" in May 2001. The court therefore concluded that "[b]ecause the Buckmires' use was permissive beginning in May 2001 . . . , the plaintiff [could not] show a period of twenty years of continuous adverse use from that date going forward, as twenty years ha[d] not elapsed since that time." Thus, the court determined that the plaintiff failed to satisfy his burden of proving that his use of the disputed parcel was continuously adverse for the twenty-year statutory period.

With respect to the defendant's counterclaim, the court determined that the defendant owns the disputed parcel, including the retaining wall and the chain-link fence, explaining that "those improvements are located on [the defendant's] property and there is no evidence as to who built them." The court further determined that the plaintiff owns the bulkhead and the stockade fence, "both of which are currently encroaching on [the defendant's] property." The court did not, however, order the plaintiff to remove the bulkhead or the stockade fence, noting that the defendant "stated at the trial that it was not seeking such relief at this time." Instead, the court encouraged the defendant "to consider allowing the bulkhead to remain in its current location under a grant of permission" and stated that "if the parties are unable to reach an amicable agreement regarding the fate of the encroachments, [the defendant] may move for relief" pursuant to its counterclaim. The plaintiff filed a motion for reconsideration, which the court denied. This appeal followed.

When reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they

2

lack evidentiary support or are legally erroneous. Loon Valley Homeowner's Ass'n v. Pollock, 171 N.H. 75, 78 (2018). We do not decide whether we would have ruled differently than the trial court, but, rather, whether a reasonable person could have reached the same decision based upon the same evidence. Id. We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given the evidence. Id. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. Id. We review the trial court's application of the law to the facts de novo. Id.

To acquire title by adverse possession, the plaintiff must show twenty years of adverse, continuous, exclusive, and uninterrupted use of the land claimed so as to give notice to the record owner that an adverse claim is being made. Id. Adverse means that the use is without license or permission; it is trespassory in nature. Id. at 79. A use of land is adverse when made under a claim of right where no right exists. Id. To satisfy the adverse use requirement, the nature of the use must have been such as to show that the record owner knew or ought to have known that the right was being exercised, not in reliance upon the owner's toleration or permission, but without regard to the owner's consent. Id. Thus, if the plaintiff uses the property pursuant to the record owner's permission, the plaintiff's use is not adverse. See id.

In the context of adverse possession, permission can be either explicit or implied. O'Malley v. Little, 170 N.H. 272, 278 (2017). The nature of the use, whether adverse or permissive, may be inferred from the manner, character, and frequency of the exercise of the right and the situation of the parties. Id. The purpose of the adverse use requirement is to alert the record owner that he or she has a cause of action before that action is foreclosed by the statute of limitations. Hewes v. Bruno, 121 N.H. 32, 34 (1981); see RSA 508:2, I (2010). Thus, in order to satisfy the adverse use requirement, the plaintiff's use of the property "should, regardless of the basis of the occupancy, alert the [record] owner of his cause of action." Hewes, 121 N.H. at 34. This standard is objective; the plaintiff's subjective intent to use land adversely is irrelevant. See id.

To establish a prima facie case of adverse use, the plaintiff must produce evidence of acts of such a character that they create an inference of non-permissive use. Loon Valley, 171 N.H. at 79. Once the plaintiff satisfies this initial burden, the burden shifts to the record owner to produce evidence that the plaintiff's use was, in fact, permitted. Id. However, the burden of persuasion remains at all times on the plaintiff. O'Malley, 170 N.H. at 278. Whether a use of property is adverse or permissive is an issue of fact. Id.

We agree with the trial court that the plaintiff failed to meet his burden of proving twenty years of continuously adverse use of the disputed parcel. See id. at 276. The trial court found, and the record supports its finding, that the

3

plaintiff failed to present any evidence demonstrating "that there was a period of twenty years of continuous adverse use before May 2001," when the defendant acquired legal title to the disputed parcel. Because the plaintiff purchased his property in April 2012, and filed his petition to quiet title in February 2020, he could not establish twenty years of continuously adverse use without tacking his period of possession to that of his predecessors-in-title, the Buckmires. See Fagan v. Grady, 101 N.H. 18, 20-21 (1957) ("The doctrine of 'tacking,' . . . is one which permits an adverse possessor to add his period of possession to that of a prior adverse possessor, in order to establish continuous adverse possession for the prescriptive period."). Thus, to prevail on his adverse possession claim, the plaintiff had to prove, among other things, that the Buckmires used the disputed parcel adversely. See id.

At trial, the director testified that, in February 2001, the defendant and the Buckmires entered an agreement with respect to the disputed parcel. Pursuant to that agreement, the defendant agreed to "let things continue as they [were]" with respect to the disputed parcel, provided that the Buckmires did not object to the defendant's zoning and planning applications. The director also testified that, although the defendant did not own the disputed parcel at the time of the meeting, its agreement with the Buckmires "was in anticipation of owning the property based on [its] purchase and sale agreement." Although, as the plaintiff points out, the director testified that she "would not have used the term 'permission'" to describe the agreement, we conclude that the evidence supports the trial court's finding that "an agreement for permissive use is more consistent with the general tenor of discussions between [the director] and the Buckmires . . . than an inference that the Buckmires were using the disputed area adversely." (Quotation and brackets omitted.)

The plaintiff argues that the February 2001 agreement between the defendant and the Buckmires was insufficient as a matter of law to establish permission because: (1) the defendant had not yet completed the sale of the disputed parcel, and, thus, lacked authority to grant permission at that time; and (2) in his view, "evidence of permissive use is not based on conversations between the parties[,] but rather how each party used the property, and if that was exclusive to the owner."[1] We need not address these arguments because,

---

[1] To support his argument, the plaintiff relies upon Bonardi v. Kazmirchuk, 146 N.H. 640 (2001), where we upheld the trial court's conclusion that the defendant had a prescriptive easement to use the plaintiff's driveway. Id. at 643. Although we need not address the merits of this argument, we take this opportunity to note that Bonardi does not support the plaintiff's proposition that "[r]elevant evidence of permissive use is not based on conversations between the parties." In Bonardi, we held that evidence of conversations between the parties was "irrelevant" as to whether the defendant had permission to use the driveway because those conversations occurred after the twenty-year statutory period had run, and, thus, any permission granted during those conversations "would have been rendered after the maturation of the prescriptive easement." Id. The plaintiff's reliance upon Bonardi is, therefore, misplaced.

4

even assuming that the February 2001 agreement was insufficient as a matter of law to establish permission, the evidence does not support a finding that the Buckmires used the disputed parcel adversely after the defendant acquired legal title to the parcel in May 2001.

At trial, the plaintiff failed to introduce any evidence demonstrating the adverse nature of the Buckmires' use following the May 2001 closing. The evidence demonstrates only that, after the closing, the defendant "let things continue as they [were]" with respect to the disputed parcel. There is no evidence that the Buckmires disputed the defendant's ownership of the disputed parcel, despite the director's statements at the February 2001 meeting regarding the true boundary line. Cf. O'Malley, 170 N.H. at 278 (holding that the evidence was insufficient to support a finding of implied permission when the plaintiffs "disputed the [record owners'] assertion of title over the disputed area and continually defied their demands to move the fence"). Nor is there any evidence that they attempted to repudiate the defendant's prior offer of permission. See Zivic v. Place, 122 N.H. 808, 813 (1982) (concluding that the possessor's use was permissive when, upon receiving written permission, he "fail[ed] to take positive action alerting [the record owner] that he intended to use the land against her wishes").

Thus, when considered in light of the February 2001 meeting and agreement, the evidence does not support a finding that the nature of the Buckmires' use after the May 2001 closing would have alerted the defendant that such use was adverse. See Loon Valley, 171 N.H. at 78 (explaining that, to acquire title by adverse possession, the plaintiff's use of the disputed parcel must be sufficient "to give notice to the owner that an adverse claim is being made"); see also Hewes, 121 N.H. at 34 ("The purpose of the [adverse use] requirement . . . is to alert the owner that he has a cause of action before that action is foreclosed by the statute of limitations."). We therefore conclude that the trial court correctly ruled that the Buckmires' use of the disputed parcel was permissive, and, consequently, that the plaintiff failed to satisfy his burden of proving twenty years of continuously adverse use.

The plaintiff next argues that, in finding that the Buckmires' use of the disputed parcel was permissive, the trial court sua sponte relied upon the affirmative defenses of license and estoppel as well as the defense of permission, even though, in his view, the defendant failed to raise those defenses in its answer. We disagree. In its answer, the defendant stated that it was "leav[ing] the Plaintiff to its burden of proof" on the elements of adverse possession. As explained above, in order to acquire title by adverse possession, the plaintiff bears the burden of proving that his or her use was continuously adverse for twenty years. See Loon Valley, 171 N.H. at 78. Thus, in denying the plaintiff's petition, the trial court did not sua sponte "allege any defenses"

5

on the defendant's behalf. Instead, it merely concluded that the plaintiff failed to satisfy his burden on the adverse use requirement. See id.

The plaintiff further argues that the trial court's decision was "contrary to estoppel by deed." As the plaintiff points out, estoppel by deed "prevents a grantor of a warranty deed, who does not have title at the time of the conveyance but who later acquires title, from denying that he or she had title at the time of the transfer." Black's Law Dictionary 630 (9th ed. 2009). The plaintiff argues that because the defendant did not own the disputed parcel at the time of the February 2001 meeting, the defendant is estopped from seeking an injunction restricting the plaintiff's use of the disputed parcel. Thus, the plaintiff argues that the trial court's order authorizing the defendant to "move for relief" in the future is "contrary to estoppel by deed." We disagree.

Even assuming that estoppel by deed could apply when, as here, the permission was verbally granted, the plaintiff's argument is unavailing. We conclude that estoppel by deed does not apply under these circumstances because the defendant does not deny that it granted the Buckmires permission to use the disputed parcel. See 700 Lake Avenue Realty Co. v. Dolleman, 121 N.H. 619, 624 (1981) (explaining that, when "the deed on its face makes either an express grant or one arising by necessary implication," estoppel by deed "prevents the grantor from denying the representation made" in the deed). To the contrary, the defendant has consistently maintained that its offer of permission was valid and effective despite the fact that it did not have legal title at that time. Moreover, in the context of adverse possession, the record owner may withdraw any permission that he or she has granted to the possessor. See 2 C.J.S. Adverse Possession § 82, at 584 (2013) ("A permissive use may . . . become hostile when the permission has been withdrawn or when events have occurred indicating that the original permission no longer obtained."). Thus, implicit in the defendant's prayer for injunctive relief is the assertion that, although it previously granted the Buckmires permission, the defendant has withdrawn that permission and now seeks to restrict the plaintiff's use of the disputed parcel. See id. The trial court's decision granting the defendant partial relief on its counterclaim, and authorizing it to move for additional relief in the future, is necessarily premised upon a finding that such withdrawal has, in fact, occurred. Because that finding is neither legally erroneous nor lacking in evidentiary support, we will not overturn it. See Loon Valley, 171 N.H. at 78.

Finally, the plaintiff argues that "the retaining wall is actually the natural boundary of the land," and, thus, the defendant "is estopped from insisting on the boundary line due to boundary by acquiescence." However, as the trial court observed in its written order, "the plaintiff has made no claim to the disputed area under a theory of boundary by acquiescence." Indeed, there is no mention of boundary by acquiescence in the plaintiff's petition to quiet title or in his motion for reconsideration, nor did he raise the theory at trial.

6

Accordingly, we conclude that the issue is unpreserved for our review, and we decline to address it.  See State v. Gates, 173 N.H. 765, 772 (2020).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**